UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CALVIN CARNES, JR.,                )
                                   )
                Petitioner,        )
        v.                         )          CIVIL ACTION
                                   )          NO. 15-11858-IT
KELLY RYAN,                        )
                                   )
                Respondent.        )

## REPORT AND RECOMMENDATION ON PETITIONER'S
## MOTION TO STAY THESE PROCEEDINGS TO EXHAUST ONE CLAIM

June 6, 2018

DEIN, U.S.M.J.

### I. INTRODUCTION[1]

The Petitioner, Calvin Carnes, Jr. ("Petitioner" or "Defendant"), was convicted by a

Suffolk County jury on June 18, 2008 of four counts of murder in the first degree, three counts

of armed robbery, one count of larceny over $250, two counts of carrying a firearm without a

license, and one count of possessing a large capacity firearm.  (SA I, Ex. A (Commonwealth v.

Carnes, No. SUCR2006-10685, Docket Sheet)).  He was sentenced on June 20, 2008 to four

terms of life in prison without the possibility of parole, with concurrent sentences for the

armed robbery, larceny and firearm convictions.  (Id.).  On September 9, 2010, his convictions

were affirmed following a direct appeal to the Massachusetts Supreme Judicial Court ("SJC").

Commonwealth v. Carnes, 457 Mass. 812, 814, 933 N.E.2d 598, 602 (2010).  After extensive

---

[1] The Respondent filed the record below in a multi-volume Supplemental Answer ("SA"), which will be
cited by volume number and exhibit number.

motion practice, some post-conviction discovery, and an evidentiary hearing, his motion for a new trial was denied by the trial court on October 7, 2013.  (SA I, Ex. J).  A Single Justice of the SJC denied his application for leave to obtain further appellate review.  (SA I, Ex. L (Common-wealth v. Carnes, No. SJ-2014-0191, Docket Sheet); Ex. Q).  He then filed a timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Docket No. 1).

Throughout his post-conviction proceedings, Carnes has been represented by counsel who has aggressively pursued all avenues in an effort to obtain a new trial.  Carnes has consistently maintained his innocence and contends that someone else has confessed to committing the crimes of which he was convicted.  (See Docket No. 13 ("Def. Habeas Mem.") at 1).  He also contends that the prosecution consistently withheld exculpatory evidence, and parceled out information in an untimely manner so that it could not be used effectively in the state proceedings.  Carnes' habeas petition contains 17 Grounds for relief (exclusive of sub-parts), and is supported by a memorandum of close to 200 pages in length.  (Docket No. 13).  In her Opposition to the habeas petition, the Respondent contends that many of the Grounds have not been exhausted.  (Docket No. 17 ("Resp. Habeas Opp.")).  However, since the Respon-dent did not raise failure to exhaust as an affirmative defense in her answer to the habeas petition, the Respondent filed a "Motion to Amend Answer to Conform to Briefing."  (Docket No. 18).  After some motion practice, this court allowed the motion to amend and authorized the Respondent to proceed with the defense of failure to exhaust.  (See Docket No. 28).

During a lengthy hearing on the habeas petition, the issue of exhaustion of claims was hotly contested.  The Petitioner argued that if any claims were not exhausted, this habeas proceeding should be stayed so as to allow him to exhaust the claims in state court.  This court

requested additional briefing on three issues: (1) a response to the Respondent's argument that several of Carnes' claims were not exhausted in state court; (2) an explanation of which issues would be raised in state court if these habeas proceedings were stayed; and (3) whether an evidentiary hearing in this court was warranted if the matter was not stayed.  (See Docket No. 32).

This matter is presently before the court on "Petitioner's Supplemental Memorandum in Support of His Petition under 28 U.S.C. § 2254 and Request to Stay Proceedings to Exhaust One Claim."  (Docket No. 35 ("Def. Supp. Mem.")).  Therein, Petitioner requests a stay of these proceedings so that he may file a motion for new trial with the state court relating to an unexhausted claim that the trial judge, who had also denied his motion for a new trial, had a conflict of interest.  (Ground 17).  Carnes argues that all other claims in his petition are fully exhausted.  The Respondent opposes the stay and continues to assert that a number of other Grounds raised by Carnes in his habeas petition also are not exhausted.  Respondent contends that in light of the unexhausted claims, either the entire petition, or at least the unexhausted claims, should be dismissed.  (See Docket No. 36 ("Resp. Opp. to Stay") at 1).

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the request to stay proceedings be granted so that Petitioner can exhaust his conflict of interest claim in state court.[2]  This court further finds that the remaining claims have been exhausted.  Therefore, this court recommends that the court deny the Respondent's request that all or part of the habeas petition be dismissed.

---

[2] Since Carnes' request for an evidentiary hearing is relevant only if certain claims in the habeas petition proceed in this court, the request is not timely and this court has not addressed whether an evidentiary hearing would be appropriate.

## II. STATEMENT OF FACTS

### The Indictments And Trial

On July 25, 2006, a Suffolk County grand jury returned indictments charging the Petitioner with four counts of murder in the first degree in violation of M.G.L. c. 265, § 1; three counts of armed robbery in violation of M.G.L. c. 265, § 17; one count of larceny over $250 in violation of M.G.L. c. 266, § 30(1); two counts of carrying a firearm without a license in violation of M.G.L. c. 269, § 10(a); and one count of possessing a large capacity firearm in violation of M.G.L. c. 269, § 10(m).  (SA I, Ex. A).  The charges stemmed from the shooting death of four men in the basement of a home in Dorchester on December 13, 2005.  The victims were Edwin Duncan, Christopher Vieira, Jason Bachiller, and Jihad Chankhour, some of whom were friends of the Petitioner.  Carnes, 457 Mass. at 813, 816, 933 N.E.2d at 602-03.

On May 15, 2008, a jury trial began before Massachusetts Superior Court Associate Justice Patrick F. Brady in Suffolk Superior Court.  (SA I, Ex. A).  Due to illness, Judge Brady was replaced by Associate Justice Margaret Hinkle during jury deliberations.  See Carnes, 457 Mass. at 814 n.1, 933 N.E.2d at 602 n.1.  Judge Hinkle discharged a juror during deliberations due to her failure to disclose information in her juror questionnaire.  (SA VIII, Ex. 24 at 38-66).  On June 18, 2008, after a 27-day trial, including nine days of jury deliberation, the jury found the Petitioner guilty of all counts.  (SA I, Ex. A).  On June 20, 2008, Justice Hinkle sentenced the Petitioner to serve four consecutive state prison terms of life for the murder convictions; three state prison terms of a minimum of ten years to a maximum of twelve years on the armed robbery convictions, to be served concurrently with the first sentence on the first-degree murder conviction; and four state prison terms of a minimum of four years to a maximum of

five years on the larceny, firearm and ammunition convictions, to be served concurrently with

the first sentence for first-degree murder.  (Id.).

### The Underlying Crime

Since the underlying facts of the crime are not critical to the issues presently before the

court, they will be summarized only briefly herein.  The SJC described the facts that the jury

could have found as follows:

> On the evening of December 13, 2005, four young men were shot to death in
> the basement of the Bourneside Street home of the victim Duncan. Three of
> the four victims had gathered frequently at that location to listen to and
> record music and "hang out." The fourth, Chankhour, was not a frequent
> participant, but was present that night to repair some of the recording
> equipment. The group had no disputes or "problems" with any other groups
> of people, and its members got along well with each other. The young men
> were serious about their music and dedicated to it and to a music recording
> group they had formed. The defendant was friendly with some members of
> the group, but was not ordinarily present during the basement music
> sessions.
>
> Two guns were often seen in the basement: an AK-47 assault rifle and a
> Mosberg pump action shotgun. These weapons were used for sound effects
> in recording music and also for the protection of expensive recording
> equipment. A "rule" of the group was that all weapons must "come into the
> basement unloaded" to avoid accidents. Prior to the homicides, one of the
> victims, Vieira, had purchased a nine millimeter Glock pistol with green "glow
> in the dark" sights; he displayed it to numerous people, treating it "like a
> toy." Two days before the murder, a person who was present early in the
> evening saw three guns in the basement: the AK-47 rifle, the shotgun, and
> Vieira's Glock pistol.
>
> At about 9 p.m., Duncan's mother heard the sound of a gunshot and saw a
> male whom she did not recognize outside the house. He was standing near
> Vieira's black Ford Escort automobile, but did not look like Vieira. A neighbor
> heard two or three "pops" at about the same time and saw a dark automo-
> bile driving away from the Duncan home. Duncan's mother tried to reach her
> son on his cellular telephone; when she could not, she went to the basement
> and saw her son and one of the other victims lying on the floor "with blood
> everywhere." She telephoned 911 and the police responded immediately.

There was no sign of a forced entry or any physical struggle. All four victims died of gunshot wounds. Twelve shell casings were found inside the basement and one outside. They were all fired from the same weapon and all were consistent with being fired from a nine millimeter Glock pistol. On the day after the murder, witnesses saw the defendant with a Glock handgun with green sights. That day he also mentioned to some friends that he had an "AK" and a "pump" that he wanted to sell. Six months later, a nine millimeter Glock pistol with green sights was found in the possession of a person with no apparent relation to the defendant. Test firing determined that this was the firearm used in the shootings.

Because the dark automobile that was seen departing the Duncan home might have been Vieira's (based on Duncan's mother's testimony that she saw a person standing near Vieira's black automobile), there was speculation at first that Vieira might have been the killer. On the night of the murders, Tanya Diaz spoke by telephone with the defendant and said she had heard that Vieira had killed some people. The defendant replied, "No, 'Fat Boy' [Vieira's nickname] is dead."

A few days after the killings, Vieira's automobile was found on a street in Dorchester, unlocked and with the keys in the ignition. A fingerprint located on the exterior door frame of the automobile was identified as the left index finger of the defendant. The automobile appeared to have been "wiped down" in places, including the driver's side door handle.

In February, 2006, the defendant admitted to his friends Maria Ortiz and Cynthia Small that he had committed the murders. He said, "It was an accident, they were [my] friends," and he began to cry. He explained that he had been in the basement and that everyone had been looking at the Glock firearm and, when he held it, he became nervous and shot someone. Then, according to Small, the defendant said that "everyone crowded around him ... he just got more nervous and the gun went off and shot everyone." The defendant also told Small that if Robert Turner, his friend who was in the basement at the time of the shootings, had not run when he did, "he would have died, too." The defendant informed Ortiz that he had told the police that he had been with her the night of the murders and asked if she would corroborate his story. She did not respond. The defendant was arrested three months later on May 19, 2006.

The defendant testified that he had actually been with his friend, Turner, on the evening of December 13, 2005. Contrary to what he had told Ortiz, he testified that he was visiting with Katrina Hall at the time of the murders. He admitted that this alibi was different from the one he related to the police in two statements ... in which he denied being in the basement of Duncan's

[6]

home on the night of the homicides and denied killing his friends. He testi-
fied also that he did not tell Ortiz and Small that he had committed the
murders.

In rebuttal, the Commonwealth called Katrina Hall, who had a specific
memory of watching the news on the night of the murders and seeing a
report about the shootings. She was with her sister that night and had no
visitors. Later that month, the defendant did visit her and took out a black
pistol and put it under her mattress. She chastised him because her daughter
was there. He also mentioned that he had an AK–47 rifle for sale.

Carnes, 457 Mass. at 814-16, 933 N.E.2d at 602-04.

### Defendant's Theory Of The Case

It is now the Defendant's contention that there is strong evidence that the crimes were
committed by Robert Turner who, according to the Commonwealth, was present during the
murders, and was later found to have sold the guns from the crime scene. (Def. Habeas Mem.
at 2-3). Turner was not charged with the murders, but was charged with four counts of
accessory after the fact, and three firearms charges, to which he pled guilty shortly before
Carnes' trial. (Id. at 3-4). Turner did not ultimately testify, but he was on the Commonwealth's
witness list. Carnes, who had no prior record, maintained his innocence throughout trial and
testified on his own behalf. (Id. at 4).

Turner committed suicide in prison on May 19, 2011. (Id. at 5). It is Carnes' contention
that the prosecution withheld evidence that Turner had confessed to the crimes and to
inducing key witnesses to testify against Carnes. (Id. at 2-5). Moreover, it is Carnes' contention
that the piecemeal production of such exculpatory evidence made it impossible to present a
complete picture to a reviewing court.

## The Petitioner's Direct Appeal

In his direct appeal to the SJC, Carnes argued that his motions to suppress his statements to the police should have been allowed.  Carnes, 457 Mass. at 814, 933 N.E.2d at 602.  He also objected to the instruction on joint venture with Turner in connection with the armed robbery and firearms charges, as well as the trial judge's admission of certain evidence charts summarizing telephone records and related testimony.  Id.  Carnes also raised a number of objections relating to the handling of the juror who was eventually discharged.  Id.  Specifically, Carnes raised the following claims on his direct appeal:

I.      Whether the trial judge dismissed the sole hold-out juror from the deliberating jury in violation of petitioner's Sixth Amendment right to a fair trial. M.G.L. c. 234, § 26b and M.G.L. c. 234a, § 39.

II.     Whether the trial judge forced a guilty verdict by sending the jury back to deliberations after five written reports of deadlock in violation of petitioner's Sixth Amendment right to a trial by an impartial jury and M.G.L. c. 234, § 34.

III.    Whether the trial judge failed to make inquiries or declare a mistrial upon several indications of misconduct by jurors in deliberations.

IV.     Whether the trial judge erred in giving the jury a joint venture instruction when the Commonwealth failed to prove that petitioner and his alleged coventurer, Robert Turner, were: (1) present at the scene of the crime, (2) with knowledge that another intended to commit the crime or with intent to commit a crime, and (3) by agreement were willing and available to help the other if necessary.

V.      Whether the trial court should have suppressed the December 22, 2005 statement of Mr. Carnes because it was obtained in violation of the Fifth Amendment and Miranda.

VI.     Whether the trial court should have suppressed the February 10, 2006 statement of Mr. Carnes because it was obtained in violation of the Fifth Amendment and Miranda.

[8]

VII.   Whether the trial court unfairly prejudiced the petitioner by admitting into evidence charts created by the Boston Police Department.

(SA I, Ex. C at 6).  The SJC addressed Carnes' claims, but concluded that there were no errors and his convictions were affirmed.[3]  Carnes, 457 Mass. at 814, 933 N.E.2d at 602.  Moreover, the court held that "after review of the entire record pursuant to our responsibility under G.L. c. 278, § 33E, [we] decline to exercise our power to grant extraordinary relief."  Id.

### The Petitioner's Motion For New Trial

On December 2, 2011, the Petitioner filed a motion for new trial and request for an evidentiary hearing.  (SA I, Ex. F).[4]  The motion focused on Carnes' contention that the Commonwealth had withheld exculpatory evidence relating to Turner's admissions of guilt, and that Carnes, himself, had discovered corroborating evidence of Turner's culpability.  In addition, the motion raised a number of claims of ineffective assistance of trial and appellate counsel, as well as other claims of prosecutorial misconduct.  (Id.).  Thus, Carnes raised the following claims in his motion for a new trial:[5]

(1)   Carnes has uncovered newly discovered evidence that calls into question his conviction and necessitates a new trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article XII of the Massachusetts Declaration of Rights.

(2)   Carnes's trial counsel provided ineffective assistance of counsel in violation of petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article XII of the Massachusetts Declaration of Rights by:

---

[3]  Carnes had moved to stay the proceedings at the SJC on the grounds that he had just learned that the Commonwealth had withheld exculpatory evidence that Turner had admitted to the crime, but the motion to stay was denied.  (See Def. Habeas Mem. at 5; SA I, Ex. B at No. 16).

[4]  Present habeas counsel was representing Carnes at this point in the state proceedings.

[5]  To assist the reader, the court has taken the liberty of reformatting the issues into distinct paragraphs.

(a)  failing to investigate and present to the jury viable third party-culprit evidence;

(b)  failing to consult an expert witness that could have proven that a third-party culprit was falsely accusing Carnes of the crime;

(c)  failing to present evidence in her possession that supported Carnes's alibi;

(d)  failing to object when the Lead Detective testified to records and facts of which he had no personal knowledge, and to significant hearsay;

(e)  failing to object when police officers preached the strength of the case and told the jury that Carnes was properly charged;

(f)  failing to object and request a curative instruction to improper vouching of credibility of the Commonwealth's witnesses;

(g)  eliciting from Carnes, Jr. and Carnes, Sr. that Carnes would have hired a lawyer if he knew he was a suspect;

(h)  failing to object to numerous instances of prosecutorial misconduct, including improper questioning, improper argument, and improper juror investigation;

(i)  failing to object to inadmissible hearsay regarding statements pur-portedly made by the victims about why they kept multiple weapons on hand without an opportunity for confrontation at trial;

(j)  failing to object when the Commonwealth repeatedly called witnesses that were not provided in the witness list and who provided significant testimony that Carnes was not permitted to investigate or defend against;

(k)  failing to object to the Commonwealth's presentation of inadmissible and prejudicial hearsay;

(l)  failing to object to the joint venture instruction;

(m)  failing to object or otherwise remedy violation of Carnes's public trial right and right to be present as guaranteed by the Sixth and Fourteenth Amendments and Article XII;

(n)  failing to bring to the jury's attention ballistics evidence found outside the house that contradicted the Commonwealth's theory;

(o)  failing to impeach witnesses with prior inconsistent statements;

(p)  failing to object to a single jury instruction where the jury instructions contained substantial errors;

(q)  failing to request an instruction on the police failure to investigate third-party culprits when that was the crux of the defense;

(r)  failing to file a single motion in limine to exclude inadmissible and prejudicial evidence including prior bad acts, the admission of the entire February 10, 2006 statement of Carnes where detectives opined that Carnes was lying, and unnecessary and excessive gruesome close up photographs of the victim's wounds;

(s)  failing to file motions in limine or objections to inadmissible scientific and opinion evidence, including: DNA evidence with improper declarations of an exact match without proper statistical foundation; improper opinion testimony about gunshot testimony not based on an accepted methodology; improper and unreliable fingerprint testimony that did not satisfy the requirements for admissibility and was not based upon valid science; improper ballistics testimony regarding certainty of a match; inadmissible police opinion testimony regarding footprints;

(t)  failing to object to the Court's answers to jury questions that violates Carnes's rights;

(u)  failing to object to the Court's failure to report a deadlock or give a Tuey-Rodriguez charge thereby coercing a jury verdict;

(v)  failing to object on constitutional grounds to the prosecutor's running of the hold out's Boston Police Department database records after a deadlock and to the Court's dismissal of that juror.

(3)  Carnes's trial counsel acted as appellate counsel, and as appellate counsel, she and her successor counsel provided ineffective assistance of counsel in violation of Carnes's rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article XII of the Massachusetts Declaration of Rights by:

(a)  failing to raise the errors contained within the cell phone chalk that deprived Carnes of his rights to due process, to a fair trial and to confront witnesses against him;

[11]

(b)  failing to raise her own trial errors on direct appeal and thus depriving Carnes of the full and fair opportunity for appellate review;

(c)  failing to raise the federal constitutional implications of the Court's failure to make inquiries or declare a mistrial upon several indications of juror misconduct in juror deliberations;

(d)  failing to raise the federal constitutional implications of the Court's jury instructions on joint venture when the Commonwealth failed to prove that Carnes or Turner were present at the scene with the requisite knowledge and intent;

(e)  failing to raise the federal constitutional implications of the Court's failure to suppress statements made by Carnes on December 22, 2005;

(f)  failing to raise the federal constitutional implications of the Court's failure to suppress statements made by petitioner on February 10, 2006;

(g)  failing to raise the federal constitutional implications of the Court's admission of inadmissible hearsay evidentiary charts created by the Boston Police Department;

(h)  failing to raise the federal constitutional implications of the Commonwealth's unauthorized investigation of jurors and tactical withholding of information;

(i)  failing to raise the federal constitutional implications of the Court's empanelment procedure whereby members of the jury were excused for responding affirmatively to certain questions that the Court believed always produced disqualification; and

(j)  failing to raise the federal constitutional implications of the prose-cutor's running of the hold out's Boston Police Department database records after a deadlock and to the Court's dismissal of that juror.

(4)  Counsel's cumulative failures as both trial and appellate counsel deprived Carnes of his right to effective assistance of counsel as required by the Sixth and Fourteenth Amendments to the United States Constitution and Article XII of the Massachusetts Declaration of Rights and it cannot be said that justice was done.

(5)  Carnes's rights to due process, confrontation, effective assistance of counsel and a fair trial were violated when Turner's Statement was admitted without limitation and without the proper foundation in

[12]

violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article XII of the Massachusetts Declaration of Rights.

(6)     Carnes's Rights pursuant to Due Process and confrontation and guaranteed by the Fifth, Sixth, and Fourteenth Amendments and Article XII were violated by the admission of the ballistics certificate for the alleged murder weapon without the analyst that created the certificate, and counsel provided ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article XII of the Massachusetts Declaration of Rights for failing to object.

(7)     Carnes's constitutional right to be present at all portions of his trial was violated when he was excluded from all sidebar discussions in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article XII of the Massachusetts Declaration of Rights.

(8)     Carnes's rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article XII of the Massachusetts Declaration of Rights were violated by the prosecutor's presentation of false or materially misleading testimony.

(9)     Carnes's rights to due process, effective assistance of counsel and a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amend-ments to the United States Constitution as well as Article XII were violated by the repeated instances of prosecutorial misconduct, including the prosecutor's investigation into juror's criminal records and the refusal to provide copies to the defendant thereby infecting the fairness of the trial; the prosecutor's investigation into jurors following declarations of a deadlock; the prosecutor's withholding of exculpatory third-party culprit evidence until after the S.J.C. oral argument; the prosecutor's improper cross-examination of Carnes; the prosecutor's improper opening and closing arguments; and the cumulative effect of the prosecutorial misconduct.

(10)    Carnes's rights to due process, effective assistance of counsel and a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amend-ments to the United States Constitution as well as Article XII were violated by improper and incorrect jury instructions, including: (a) the erroneous instruction on homicide that relieved the Commonwealth of the burden of proving all elements beyond a reasonable doubt; (b) the erroneous instruction that the jury was required to return the

highest degree of murder that the Commonwealth proved beyond a reasonable doubt; (c) the erroneous instruction on armed robbery and felony murder where it was not supported by the evidence; (d) the erroneous jury instruction regarding proper inference that impermissibly shifted the burden of proof to Carnes on the element of intent; (e) the erroneous instruction on joint venture; (f) the Court's failure to instruct on the police failure to investigate as a foundation for reasonable doubt.

(11)   Carnes's rights to due process, effective assistance of counsel and a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article XII of the Massachusetts Declaration of Rights were violated by the Court's failure to direct verdicts of not guilty on the first degree felony-murder charges because the Commonwealth failed to provide sufficient evidence for a conviction.

(12)   Carnes's rights to due process, effective assistance of counsel and a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article XII of the Massachusetts Declaration of Rights were violated by the Court's dismissal of a deliberating juror[] after reports of a deadlock and with information that the juror was the lone holdout because the substitute judge made erroneous findings of fact with regards to a hearing held by the trial judge and appellate counsel did not challenge the erroneous finding.

(13)   Carnes's rights to due process and a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article XII of the Massachusetts Declaration of Rights were violated by the cumulative impact of all errors made at his trial.

(SA I, Ex. F).

While the motion for a new trial was pending, and in connection with Carnes' claim of newly discovered evidence, the court held an evidentiary hearing on September 27, 2012 concerning admissions Turner had allegedly made to inmates.  (See SA I, Ex. J at 4).  During this period, and before a ruling on the motion for a new trial, the defense continued to investigate

the handling of the murder investigation, and, on August 2, 2013, requested another evidentiary hearing.  (SA I, Exs. F, G).  This request was ultimately denied.  (SA I, Ex. K).

In lengthy decisions dated October 7, 2013, the original trial judge, Judge Brady, denied Carnes' motion for a new trial, and denied his request for any further discovery or evidentiary hearing.  (SA I, Exs. J, K).  As detailed more fully below, Carnes contends that unbeknownst to him, Judge Brady had a conflict of interest and a bias in favor of the Commonwealth, as evidenced by a letter the Judge wrote on August 15, 2014 supporting the prosecutor for a judicial position, based in large part on his prosecution of Carnes.  This is the issue that Carnes is seeking to exhaust at the state level.  Judge Brady's ruling on the motion for a new trial, as well as his denial of a further evidentiary hearing, was premised in large part on his finding of no prosecutorial misconduct in the belated production of evidence, and his rejection of all testimony proffered on behalf of the Defendant.  Therefore, any bias on the part of the trial judge in favor of the Commonwealth would be of critical importance.

On November 6, 2013, Carnes filed a motion for reconsideration of the denial of his motion for a new trial.  (See SA I, Ex. A).  As discussed more fully below, this was based on the fact that in his denial of the motion, the trial judge had unilaterally deemed the transcript of his jury charge to have been incorrect and amended it after listening to a tape of his charge.  (See id. at Nos. 104-107).  Thus, Carnes contended that the judge had made himself a witness in violation of the Defendant's constitutional rights.  (Def. Supp. Mem. at 13).  The motion for reconsideration was denied.  (SA I, Ex. A at No. 107).

[15]

**The Petitioner's "Gatekeeper" Application For Leave To Appeal To The SJC**

Pursuant to M.G.L. c. 278, § 33E, on May 16, 2014, the Petitioner filed with the Single

Justice of the SJC a "gatekeeper" application for leave to obtain further appellate review

("ALOFAR") of the denial of his motion for a new trial.  (SA 1, Ex. M; see also Ex. L (Common-

wealth v. Carnes, No. SJ-2014-0191, Docket Sheet)).  The claims in the Petitioner's gatekeeper

application generally fell into two broad categories: (1) newly discovered evidence; and

(2) ineffective assistance of trial counsel and appellate counsel.  As the Respondent has

described the claims raised by the ALOFAR, without objection from Carnes:

> I.  petitioner has discovered newly-discovered and withheld evidence that
> calls into question his conviction and necessitates a reversal of his conviction
> under the Fifth, Sixth and Fourteenth Amendments to the United States
> Constitution and Article XII of the Massachusetts Declaration of Rights;
>
>> (A)   with respect to new third-party culprit evidence in the present
>> case:
>>
>>> (i) the Commonwealth failed to disclose letters sent to Cynthia
>>> Small by Robert Turner prior to trial which evidenced the plan to
>>> frame petitioner;
>>>
>>> (ii) a new trial is required due to the significant promises, rewards,
>>> and inducements that were not disclosed prior to trial;
>>>
>>> (iii) the newly discovered evidence requires a new trial;
>>>
>>> (iv) the newly discovered handwriting expert opinion would have
>>> played an important role in the jury's deliberations and requires a
>>> new trial;
>>>
>>> (v) the newly discovered evidence relating to Turner's confession
>>> to various inmates requires a new trial;
>>
>> (B)   as to new scientific studies that invalidate the forensic testimony
>> and call into question petitioner's convictions:
>>
>>> (i) the NAS Report and NRC Reports have invalidated the ballistics
>>> evidence that was presented at petitioner's trial;

[16]

(ii) the NAS Report and NRC Report have invalidated the fingerprint testimony that was presented at petitioner's trial;

(C)   based on all this new evidence, it cannot be said justice was done.

II.  The motion for new trial judge violated petitioner's Fifth, Sixth and Fourteenth Amendment and Article XII rights by making himself a witness in the proceeding.

III.  trial counsel provided ineffective assistance of counsel in violation of petitioner's Sixth and Fourteenth Amendment rights as well as Article XII of the Massachusetts Declaration of Rights;

(A)   trial counsel failed to investigate or raise a viable third-party culprit defense that could have provided reasonable doubt;

(i) trial counsel failed to investigate third-party culprit evidence;

(ii) trial counsel failed to present a forged letter purported to be written by petitioner to one of the Commonwealth's main witnesses;

(iii) trial counsel failed to consult a handwriting expert;

(B)   trial counsel failed to present evidence in her possession that supported petitioner's alibi;

(C)   trial counsel's inadequate preparation and inattention led to inadmissible evidence being presented to the jury;

(i) trial counsel failed to object when the lead detective testified to records and facts about which he had no personal knowledge;

(ii) trial counsel failed to object when police officers preached the strength of their case and told the jury petitioner was properly charged;

(iii) trial counsel provided ineffective assistance of counsel by failing to object and request a curative instruction to improper vouching as to the credibility of Commonwealth's witnesses;

(iv) trial counsel provided ineffective assistance of counsel by eliciting testimony from petitioner and his father that petitioner would have requested a lawyer if he knew he was a suspect;

(v) trial counsel provided ineffective assistance of counsel by failing to object to numerous instances of prosecutorial misconduct;

(vi) trial counsel provided ineffective assistance of counsel by failing to object to inadmissible hearsay regarding statements purportedly made by the alleged victims as to why they kept multiple weapons on hand without an opportunity for confrontation at trial;

(vii) trial counsel was ineffective by failing to object when the Commonwealth repeatedly called witnesses that were not provided on the witness list and who provided significant testimony that petitioner was not permitted to investigate or defend against;

(viii) petitioner was denied his right to effective assistance of counsel when counsel repeatedly failed to object to the Commonwealth's presentation of hearsay evidence, where the evidence was otherwise inadmissible and was prejudicial to petitioner;

(D)   petitioner was denied effective assistance of counsel when his counsel failed to object to the joint venture instruction;

(E)   petitioner was denied effective assistance of counsel when his trial counsel failed to object or otherwise remedy the violation of his right to be present and to a public trial;

(F)   counsel was ineffective for failing [to] bring to the jury's attention ballistics evidence found outside the house suggesting that a shooting had taken place outside of the house in contradiction of the Commonwealth's theory of the case;

(G)   trial counsel's inadequate preparation deprived petitioner of effective assistance of counsel when counsel failed to impeach critical witnesses with their prior statements;

(H)   counsel provided ineffective assistance by failing to object to a single jury instruction where the jury instructions contained errors that deprived petitioner of his rights under the state and federal constitution;

(I)   counsel provided ineffective assistance by failing to request an instruction on the police failure to investigate a third-party culprit when that was the crux of the defense;

(J)   trial counsel failed to file a single motion in limine to exclude inadmissible and prejudicial evidence;

[18]

(i) trial counsel failed to move in limine to exclude the prior bad acts of petitioner, and her failure denied petitioner the effective assistance of counsel;

(ii) trial counsel failed to move in limine to redact or otherwise object to the admission of the entire February 10, 2006 statement of petitioner despite the fact that detectives opined that petitioner was lying;

(iii) trial counsel failed to move in limine or to object to the admission of the gruesome photographs of the victim's gunshot wounds;

(K)  trial counsel's inadequate preparation and understanding of the scientific testimony led to the admission of objectionable and inadmissible opinion testimony in violation of petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments and Article XII;

(i) DNA evidence led to the admission of the objectionable and improper declarations of an exact match without proper statistical foundation in violation of petitioner's right to the effective assistance of counsel;

(ii) trial counsel failed to move in limine or otherwise object to the improper "expert" opinion regarding gunshot residue;

(iii) trial counsel failed to challenge the scope of the fingerprint expert's testimony prior to trial through a viable motion in limine;

(a) the fingerprint testimony should not have been admitted because it did satisfy the standards of *Daubert/Lanigan* [419 Mass. 15, 641 N.E.2d 1342 (1994)];

(b) the fingerprint expert should not have been able to opine as to wiped fingerprints off the getaway car when this testimony was not based on any science and it was admitted under the guise of "expert testimony" in violation of petitioner's constitutional rights;

(iv) the ballisticians' testimony of certainty regarding a match was error, and counsel was ineffective for failing to move to limit this testimony;

(a) even though petitioner was tried prior to the issuance of the NRC and NAS Reports, the testimony offered against petitioner failed to satisfy the *Daubert/Lanigan* standard and should not have been admitted;

[19]

(b) a motion in limine could have precluded the declaration of
an exact match;

(v) trial counsel failed to file a motion in limine to exclude the trajectory
analysis opinion testimony;

(vi) trial counsel failed to file a motion in limine to exclude, or
otherwise object to, inadmissible police testimony regarding
footprints;

(L)   counsel provided ineffective assistance by failing to object to the
court's answers to jury questions;

(i) the trial court improperly instructed on petitioner's *Miranda*
rights, and counsel failed to object;

(ii) counsel failed to object to the trial court's erroneous answer to
the jury's question about a required finding of first degree felony
murder;

(iii) counsel failed to object to trial court's failure to report a
deadlock or give a *Tuey-Rodriguez* charge, thereby coercing a
verdict;

(M)   appellate counsel failed to raise errors contained within the cell
phone chalk, which deprived petitioner his rights to due process, a fair
trial and confrontation;

(N)   as appellate counsel, trial counsel perpetuated her failures by not
raising them on direct appeal and depriving petitioner of the full and
fair opportunity for appellate review;

(O)   appellate counsel provided ineffective assistance of counsel in
violation of the Sixth and Fourteenth Amendments to the United States
Constitution and Article XII by failing to raise the federal constitutional
implication of the court's failure to make inquiries or declare a mistrial
upon several indications of misconduct by jurors in deliberations, which
violated petitioner's rights to due process and a fair trial under the
Fifth, Sixth and Fourteenth Amendments to the United States
Constitution;

(P)   appellate counsel provided ineffective assistance of counsel by
failing to raise the federal constitutional implications of the court's jury
instructions on joint venture when the Commonwealth failed to prove
that petitioner or Turner were present at the scene, with knowledge
that another intended to commit the crime or with intent to commit

[20]

the crime and by agreement were willing and available to help the other if necessary, violating petitioner's rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution;

(Q)   appellate counsel provided ineffective assistance of counsel by failing to raise the federal constitutional implications of the court's failure to suppress statements made by petitioner on December 22, 2005, violating petitioner's rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution;

(R)   appellate counsel was ineffective by failing to raise the federal constitutional implications of the court's failure to suppress statements made by petitioner on February 10, 2006, violating petitioner's rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution:

(S)   appellate counsel provided ineffective assistance of counsel by failing to raise the federal constitutional implications of the Superior Court's admission of inadmissible evidentiary charts created by the Boston Police Department, violating petitioner's rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution;

(T)   appellate counsel provided ineffective assistance of counsel by failing to raise the federal constitutional implications of [the] Commonwealth's unauthorized investigation of jurors and the tactical withholding of information, violating petitioner's rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution;

(U)   appellate counsel was ineffective by failing to raise the federal constitutional implications of the court's empanelment procedure whereby members of the jury venire were excused for responding affirmatively to certain questions that the court believed always produced disqualification, violating petitioner's rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution;

(V)   counsel's cumulative failure as both trial and appellate counsel deprived petitioner of his constitutional right to effective assistance of counsel as required by the Sixth Amendment and Article XII and it cannot be said that justice was done.

IV. petitioner's rights to due process, confrontation, and a fair trial were violated when Turner's statement was admitted at trial in violation of his Fifth, Sixth, and Fourteenth Amendment rights as well as Article XII.

V.  petitioner's rights to due process and confrontation were violated by the admission of the ballistics certificate for the alleged murder weapon without the analyst that created the certificate, and counsel was ineffective for failing to object.

VI.  petitioner's constitutional right to be present at all portions of his trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments as well as Article XII was violated when he was excluded from all sidebar discussions.

VII.  petitioner's rights pursuant to the Sixth and Fourteenth Amendments and Article XII were violated with the presentation of false or materially misleading testimony.

VIII.  petitioner's rights to due process and a fair trial pursuant to Fifth and Fourteenth Amendments were violated because of repeated instances of prosecutorial misconduct, and his Sixth Amendment right to effective assistance of counsel was violated when trial counsel failed to object to prosecutorial misconduct;

    (A)  the prosecutor's investigation into jurors' criminal records and refusal to provide copies of the investigation to the petitioner infected the fairness of the trial;

    (B)  the prosecutor's investigation into jurors following declarations of a deadlock deprived petitioner of due process and a fair trial and a jury trial;

    (C)  petitioner's rights to due process were violated when the prose-cutor withheld exculpatory third-party culprit evidence until after the SJC heard his case;

    (D)  petitioner's right[s] to due process, a fair trial and to be heard in his own defense were violated when trial counsel permitted the prose-cutor to question petitioner about the credibility of other witnesses;

    (E)  petitioner's rights to due process, a fair trial and to be heard in his own defense were violated when trial counsel permitted the prosecutor to make argumentative and inappropriate statements at petitioner in an effort to badger him, rather than question him;

    (F)  the prosecutor's improper arguments deprived petitioner of his rights to due process and a fair trial in violation of the Fifth, Sixth, and

Fourteenth Amendments to the United States Constitution and Article XII;

> (i) the prosecutor's argument was improper because it constituted an attack on defense counsel and shifted the burden of proof;

> (ii) the prosecutor's argument was improper because he wildly misstated the evidence and argued facts not in evidence;

> (iii) the prosecutor's argument was improper because he played on jurors' emotions and sympathies;

> (iv) the prosecutor's argument was improper because he injected his personal opinion about the strength of the evidence;

(G) the cumulative effect of the prosecutorial misconduct deprived petitioner of his rights to due process and a fair trial.

IX.  petitioner was denied his rights to due process and a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article XII of the Massachusetts Declaration of Rights because the trial court erroneously failed to direct a verdict and the jury instructions contained substantial constitutional error;

> (A)  the trial court's jury instruction on homicide relieved the Commonwealth of the burden of proving all elements of homicide, thereby depriving petitioner of due process of law;

> (B)  the trial court erred in instructing the jury that it was required to return the highest degree of murder that the Commonwealth proved beyond a reasonable doubt;

> (C)  the trial court erred in instructing the jury on felony murder where it was not warranted by the evidence or supported by the Commonwealth's theory;

> (D)  the trial court erred in failing to direct a verdict on the charges of armed robbery and felony murder in violation of petitioner's rights pursuant to the Fifth, Sixth, and Fourteenth Amendments and Article XII;

> (E)  the trial court's jury instruction with regards to improper inferences was impermissible as it effectively shifted the burden of proof to petitioner on an element of intent;

> (F)  the trial court gave an erroneous instruction on joint venture;

(G)  the trial court failed to give an instruction on the police failure to investigate in violation of petitioner's state and federal constitutional rights.

X.  the court erred in dismissing a deliberating juror after reports of deadlock and with information that the juror was the lone holdout because the substitute judge made erroneous findings of fact with regard to hearings held by the trial judge, and appellate counsel provided ineffective assistance by failing to challenge that erroneous finding.

XI.  petitioner was denied his rights to due process, effective assistance of counsel, and a fair trial pursuant to the Fifth, Sixth and Fourteenth Amendments as well as Article XII by the cumulative impact of all the errors made at trial.

(Resp. Opp. to Stay at 8-15 (describing SA I, Ex. M) (with some modification of punctuation for clarity)).

### The Unexhausted Claim

Significantly, while the ALOFAR was pending, on March 26, 2015, Carnes also filed with the SJC a motion to remand his motion for new trial to the trial court for full re-evaluation, on the grounds that the trial judge, who ruled on the motion for a new trial, "holds an apparent bias in favor of the Commonwealth, and more particularly, Joshua Wall, who was the trial prosecutor on the Carnes case."  (SA I, Ex. N[6] at 1; Ex. L).  As detailed more fully below, Carnes argued that despite the clear and compelling evidence that Mr. Wall had failed to produce exculpatory evidence regarding Turner's confessions in a timely manner, among other things, Judge Brady had written a letter in support of Mr. Wall's application for a judicial position on August 15, 2014, describing his prosecution of the Carnes case as "exemplary" and crediting

---

[6]  While an incomplete copy of the motion to remand is included in the Supplemental Answer at Ex. N, this court obtained and reviewed a complete copy.

him for greatly improving the professionalism of the District Attorney's office.  (SA I, Ex. N at

Ex. A).

There does not appear to have been an express ruling on the motion to remand,

although it obviously was not allowed.  On May 12, 2015, a Single Justice denied the ALOFAR

without opinion, ruling only that "[u]pon consideration, the application for leave to appeal from

the denial of [Petitioner]'s motion for new trial is DENIED."  (SA I, Ex. Q).

### The Federal Habeas Proceedings

On May 15, 2015, the Petitioner filed the instant petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254, raising the following seventeen Grounds for relief:

> (1)  petitioner has uncovered newly discovered evidence and withheld
> evidence that calls into question his conviction and necessitates a reversal of
> his conviction under the Fifth, Sixth and Fourteenth Amendments to the
> United States Constitution;
>
> (2)  the motion for new trial judge violated petitioner's Fifth, Sixth and
> Fourteenth Amendment rights by making himself a witness in the
> proceedings;
>
> (3)  petitioner's trial counsel, who also served as appellate counsel, provided
> ineffective assistance of counsel in violation of his Sixth and Fourteenth
> Amendment rights and perpetuated her failures by not raising them on direct
> appeal, depriving petitioner of a full and fair opportunity for appellate
> review;
>
> (4)  petitioner's rights to due process, confrontation and a fair trial were
> violated when co [defendant] Turner's statement was admitted at trial in
> violation of his Fifth, Sixth, and Fourteenth Amendment rights;
>
> (5)  petitioner's rights to due process and confrontation pursuant to the Fifth,
> Sixth and Fourteenth Amendments were violated by the admission of the
> ballistics certificate for the alleged murder weapon without the analyst that
> created the certificate, and counsel provided ineffective assistance for failing
> to object;

[25]

(6)  petitioner's constitutional right to be present at all portions of his trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments was violated when he was excluded from all sidebar discussions;

(7)  petitioner's rights pursuant to the Sixth and Fourteenth Amendments were violated with the presentation of false and misleading testimony;

(8)  petitioner's rights to due process and a fair trial pursuant to the Fifth and Fourteenth Amendments were violated because of repeated instances of prosecutorial misconduct, and his Sixth Amendment right to effective assistance of counsel was violated when trial counsel failed to object to this prosecutorial misconduct;

(9)  petitioner's rights to due process under the Fifth and Fourteenth Amendments were violated when the prosecutor withheld exculpatory third-party culprit evidence until after the Supreme Judicial Court heard his case;

(10)  petitioner was denied his rights to due process and a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments because the jury instructions contained substantial constitutional error;

(11)  the trial court erred in dismissing a deliberating juror after reports of a deadlock and with information that the juror was the lone holdout because the substitute judge made erroneous findings of fact with regard to hearings held by the trial judge, and appellate counsel provided ineffective assistance by failing to challenge the erroneous finding;

(12)  the trial court erred in denying the petitioner's motion to suppress statements;

(13)  the trial court erred in excusing without further inquiry members of the jury venire who responded affirmatively to certain questions that the judge considered almost always grounds for disqualification;

(14)  the trial judge erred in providing an instruction on joint venture where the Commonwealth failed to prove petitioner or Turner were (a) present at the scene of the crime; (b) with knowledge that another intended to commit the crime or with intent to commit a crime; and (c) by agreement were willing and available to help the other if necessary;

(15)  appellate counsel failed to raise the federal constitutional implications of all of the errors raised during the direct appeal in violation of petitioner's Fifth and Fourteenth Amendment due process rights;

(16)  petitioner was denied his rights to due process, effective assistance of counsel and a fair trial pursuant to the Fifth, Sixth, and Fourteenth Amendments due to the cumulative impact of all errors made at trial; and

(17)  petitioner's right to due process under the Fifth and Fourteenth Amendments were violated where the motion judge had an apparent conflict of interest.

(Petition (Docket No. 1) ¶ 12 & Addendum 2).  On July 16, 2015, Respondent filed an answer and supplemental answer, including the Massachusetts state court record.  (Docket Nos. 9, 10).  On September 21, 2015, the Petitioner filed a 197-page memorandum in support of his petition for habeas relief.  (Docket No. 13).  Respondent filed a lengthy memorandum in opposition to the petition.  (Docket No. 17).

As detailed above, on April 15, 2016, this court held a hearing on the habeas petition, which focused on the issue of whether the claims in the petition were exhausted.  (See Docket No. 32).  The court ordered supplemental briefing, and this matter is presently before the court on the Petitioner's request that the matter be stayed to enable him to exhaust Ground 17 of his habeas petition, the alleged conflict of interest of the trial judge.  The Respondent opposes the stay, and further argues that in addition to Ground 17, Grounds 2, 4, 5, 6, 7, 9, and 10 have not been exhausted.  (See Docket No. 36 at 21-22).

Additional facts will be provided below where appropriate.

### III.  ANALYSIS

### A.    Stay And Abeyance Procedure

"A federal court may not consider a petition for a writ of habeas corpus by a person in state custody unless the petitioner has previously exhausted his state court remedies for all claims raised in the federal habeas petition."  Santana v. Ryan, No. 14-14097-ADB, 2015 WL

4576913, at *3 (D. Mass. July 30, 2015) (citing 28 U.S.C. 2254(b)(1); Rose v. Lundy, 455 U.S. 509, 518, 102 S. Ct. 1198, 1203, 71 L. Ed. 2d 379 (1982)).  Carnes has requested that this court stay the instant proceeding while he returns to state court to proceed with his contention that the trial judge, who also ruled on his motion for a new trial, was biased in favor of the prosecution. This is a request for a "stay and abeyance" whereby "petitioner would receive a stay in his federal habeas case, permitting him to return to state court to complete the requirements for exhaustion on any unexhausted claims, and he could subsequently return to federal court to pursue his habeas claims."  Clements v. Maloney, 485 F.3d 158, 169 (1st Cir. 2007).  This procedure is available only in limited circumstances where "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  Rhines v. Weber, 544 U.S. 269, 278, 125 S. Ct. 1528, 1535, 161 L. Ed. 2d 440 (2005).  Where the stay and abeyance is not merited, "the [district] court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief."  Id.

As detailed below, this court finds that the Petitioner has shown good cause for failure to exhaust his claim first in state court, that the claim is potentially meritorious, and that there is no indication that the Petitioner engaged in intentionally dilatory tactics.  Therefore, this court recommends that the request for a stay be granted.

**B.     A Stay And Abeyance Is Warranted**

**Good Cause For Failure To Exhaust**

Carnes alleges that he failed to exhaust his conflict of interest claim in state court

because he was unaware of the potential conflict of interest until after the trial court had

already been divested of jurisdiction.  Once he learned of the potential conflict, Carnes brought

up the claim at the first available opportunity with the Single Justice of the SJC in connection

with his ALOFAR (gatekeeper) petition, and asked that the issue be remanded to the trial judge.

The Respondent argues that the Petitioner has not demonstrated "good cause" because he

could have filed a motion for a new trial before filing his habeas petition, which would have

tolled the statute of limitations under 28 U.S.C. § 2244(d)(2).  This court finds that the

Respondent's argument elevates form over substance – Carnes had, at most, three days in

which to file a habeas petition when he learned of the denial of his motion to remand.  (See

Def. Supp. Mem. at 26).  Filing the habeas petition and then seeking a stay was entirely approp-

riate.  This court concludes that the Petitioner has demonstrated "good cause" for failing to

exhaust his conflict of interest claim.

Carnes did not learn of Judge Brady's alleged conflict, as reflected in his letter of support

for the prosecutor, until after Carnes had filed his gatekeeper petition under M.G.L. c. 278,

§ 33E seeking leave to obtain further appellate review.  By that time, the trial court had already

been divested of jurisdiction to hear a subsequent motion for new trial.  See Commonwealth  v.

Cronk, 396 Mass. 194, 197, 484 N.E.2d 1330, 1333 (1985) ("Once a party enters an appeal,

however, the court issuing the judgment or order from which the appeal was taken is divested

of jurisdiction to act on motions to rehear or vacate.").  The only remedy available to Carnes

was to file a motion to remand with the SJC requesting that the claim relating to the letter of

recommendation be litigated in the trial court through a subsequent motion for a new trial.

Carnes utilized this avenue, but the motion was denied.  (SA I, Exs. N, Q).  Since "[r]aising a

claim for the first time to the state's highest court on discretionary review is not fair presenta-

tion for purposes of exhaustion[,]" it is undisputed that despite requesting that the SJC remand

the issue, the claim is not fully exhausted.  Gunter v. Maloney, 291 F.3d 74, 81 (1st Cir. 2002).

The Respondent contends, in passing, that this claim was procedurally defaulted.  (See

Resp. Opp. to Stay at 19).  Although the Single Justice of the SJC denied the motion to remand,

no explanation was given by the Single Justice for the denial.  Thus, there was no finding that

the claim was being denied because it was not new, or because of "some other theory

compatible with waiver."  See Jackson v. Marshall, 634 F. Supp. 2d 146, 158-59 (D. Mass. 2009)

(quoting Phoenix v. Matesanz, 189 F.3d 20, 26 (1st Cir. 1999)).  As discussed more fully below,

as a result, there was no procedural default and habeas review is not barred "because the

challenged state decision rests upon some procedural bar erected by state law."  Phoenix, 189

F.3d at 26.

After the Single Justice denied the motion to remand, the only available alternative for

Carnes to exhaust his conflict of interest claim was to file a motion for new trial pursuant to

Mass. R. Crim. P. 30 "as he was entitled to do as of right under Massachusetts law."  Gunter,

291 F.3d at 82.  As noted above, Carnes had only three days in which to file his habeas petition

as of the time he learned of the denial of his request that the conflict of interest issue be

remanded to the trial court.  He followed the safer course of filing his habeas petition in a

timely manner, and then seeking leave to pursue the conflict of interest issue in state court.

Such a stay and abeyance procedure, as noted above, is a recognized procedure and appropriate in instances such as the instant one.  This is not a situation where there was a significant period of time in which to exhaust the claim before the habeas petition had to be filed. Compare Sullivan v. Saba, 840 F. Supp. 2d 429, 437 (D. Mass. 2012) (where counsel had almost one year before the statute of limitations to file a habeas petition ran out, which was "plenty of time to exhaust Petitioner's claims and refile the habeas petition[,]" stay and abeyance was inappropriate since there was no good cause for Petitioner's failure to exhaust).  Counsel learned of the alleged conflict of interest late in the state appellate process, and acted promptly.  There was good cause for Carnes' failure to exhaust his conflict of interest claim.

## The Conflict Of Interest Claim Is Potentially Meritorious

It is a bedrock principle of due process of law that judges be "as free, impartial and independent as the lot of humanity will admit."  Commonwealth v. Campbell, 5 Mass. App. Ct. 571, 586, 366 N.E.2d 44, 57 (1977) (quoting Ward v. Village of Monroeville, 409 U.S. 57, 93 S. Ct. 80, 34 L. Ed. 2d 267 (1972)).  On August 15, 2014, Judge Brady, the trial judge who also ruled on Carnes' motion for a new trial, sent a letter to the Governor's Council in support of the application of the prosecutor, Joshua Wall, for appointment to the Massachusetts Superior Court bench.[7]  (SA I, Ex. N at Ex. A).  Therein, Judge Brady praised Mr. Wall, and credited him with substantially improving the professionalism of the Suffolk County District Attorney's Office. Moreover, he specifically credited Mr. Wall's conduct during the Carnes trial, finding his prosecution of this "difficult and emotional" case to be "exemplary."  (Id.).

---

[7]  In his letter, Judge Brady refers to the prosecutor as "Josh," evidencing a friendship with Mr. Wall.

The Petitioner argues that this letter shows a strong predisposition in favor of the prosecution.  If it existed, such a bias could be particularly troublesome in this case.  As noted above, it was a difficult case, and the jury deliberated for nine days.  It appears that the Defendant had no prior record.  While many issues were raised in Carnes' motion for a new trial, they were all rejected by the trial judge.  There was no substantive review of the denial of the issues raised in the motion for a new trial, the ALOFAR simply having been "Denied" without opinion.

A review of Judge Brady's decisions denying Carnes' motion for a new trial, and denying his request for a further evidentiary hearing, reveals that Judge Brady exercised considerable discretion in his rulings, made a number of credibility determinations in rejecting evidence proffered on behalf of Carnes, and made assumptions about trial strategies.[8]  (See, e.g., SA I, Ex. J at 3-8, 24-26, 29-30, 31-34, 60-61, 62-63; Ex. K at 1-6).  The judge found none of Carnes' witnesses to be credible, including a handwriting expert proffered by the Defendant.  (SA I, Ex. K at 1-4).  As detailed more fully below, the trial judge, after finding that the transcript of his jury instructions revealed an improper joint venture instruction, unilaterally amended the transcript of his jury instructions after listening to the tape.  The trial judge also excused the prosecution's admittedly late production of material.  As detailed more fully in his "Memorandum of Law in Support of His Request for a Further Evidentiary Hearing on his Motion for a New Trial" (SA I, Ex. G) and his Supplemental Memorandum filed in this court (Docket No. 35), Carnes contends that the prosecution turned over exculpatory evidence after the trial was concluded and, even then, in a piecemeal fashion and not until briefing for his direct appeal had been concluded.  (See SA I, Ex. G at 1-4).  The timing of such productions is

---

[8]  There is no indication that trial counsel submitted any affidavit about decisions made during trial.

not disputed, including the fact that some correspondence was not produced for over 18 months after it had been received by law enforcement.  (See id.; Ex. K at 3).  While the trial judge challenges the significance of the information, Carnes argues that the late-produced materials included correspondence which constituted evidence that Turner confessed to committing the homicides and framing Carnes, as well as evidence reflecting promises, rewards and inducements to key witnesses.  (SA I, Ex. K; Ex. G at 1-4; Def. Supp. Mem. at 22-24).

This court recognizes that there is a high standard which must be met before disqualification of a trial judge is appropriate.  "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Yosd v. Mukasey, 514 F.3d 74, 78 (1st Cir. 2008) (quoting Liteky v. United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994)).  It very well may be that Carnes' claim of bias will not be sustained. Given the deference the habeas court must give to the state court's findings of fact, however, Carnes should be able to explore this issue with the state court, and then present it to the habeas court if appropriate.  See Lena v. Commonwealth, 369 Mass. 571, 573-76, 340 N.E.2d 884, 886-88 (1976) (case remanded to allow defendant to seek disqualification of sentencing judge based on statements made following verdict).

### Carnes Did Not Engage In Dilatory Tactics

As already discussed, Carnes raised the issue of the trial judge's potential conflict as soon as he learned of the relevant facts.  There is nothing to suggest that Carnes ever engaged in any intentionally dilatory tactics, or that he will not proceed expeditiously in state court.  See

[33]

Rhines, 544 U.S. at 277-78, 125 S. Ct. at 1535.  For all these reasons, this court finds that

Petitioner has shown good cause for failure to exhaust his claim first in state court, that the

claim is potentially meritorious, and that there is no indication that the Petitioner engaged in

intentionally dilatory tactics.  Therefore, this court recommends that the request to stay these

proceedings be granted.

C.      **Standard Of Review – Exhaustion**

The parties disagree as to whether other Grounds raised by Carnes in his habeas

petition have been exhausted.  The Respondent contends that there are a number of additional

unexhausted claims which should be dismissed.  This court disagrees and recommends that

Respondent's request that any claims be dismissed be denied.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available

state remedies, 28 U.S.C. § 2254(b)(1), thus giving the state the first 'opportunity to pass upon

and correct alleged violations of its prisoners' federal rights.'"  Josselyn v. Dennehy, 475 F.3d 1,

2-3 (1st Cir. 2007) (quoting Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed.

2d 865 (1995) (per curiam)).  "In order to promote principles of comity and federalism, 'a

federal court will not entertain an application for habeas relief unless the petitioner first has

fully exhausted his state remedies in respect to each and every claim contained within the

application.'"  Fusi v. O'Brien, 621 F.3d 1, 5 (1st Cir. 2010) (quoting Adelson v. DiPaola, 131 F.3d

259, 261 (1st Cir. 1997)).  The exhaustion doctrine serves "'to protect the state courts' role in

the enforcement of federal law and prevent disruption of state judicial proceedings.'"  Id.

(quoting Rose v. Lundy, 455 U.S. 509, 518, 102 S. Ct. 1198, 1203, 71 L. Ed. 2d 379 (1982)).  Not

only does the doctrine ensure "that state courts are afforded an adequate opportunity to

[34]

adjudicate constitutional claims properly within their jurisdiction[,]" but the exhaustion

"doctrine also finds support in a pragmatic recognition that federal claims that have been fully

exhausted in state courts will more often be accompanied by a complete factual record to aid

the federal courts in their review." Id. (internal quotation marks and citations omitted).

"In order to exhaust a claim, the petitioner must 'present the federal claim fairly and

recognizably' to the state courts, meaning that he 'must show that he tendered his federal

claim in such a way as to make it probable that a reasonable jurist would have been alerted to

the existence of the federal question.'" Clements, 485 F.3d at 162 (quoting Casella v. Clemons,

207 F.3d 18, 20 (1st Cir. 2000)) (additional internal quotation marks and citations omitted).  This

means that the legal theories presented as grounds for relief must be the same in both the

state and federal courts.  Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987), and cases cited.  "It is not

enough that the same facts underly the claims."  Id.; see also Baldwin v. Reese, 541 U.S. 27, 32-

33, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  A "petitioner's failure to present his federal

constitutional claim to the state courts is ordinarily fatal to the prosecution of a federal habeas

case."  Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011).

Significantly, to exhaust a claim it must be submitted to the state's highest court.  In

Massachusetts, this means that it must be brought to the Supreme Judicial Court.  Mele v.

Fitchburg Dist. Ct., 850 F.2d 817, 820 (1st Cir. 1988).  "It is not enough merely to raise an issue

before an intermediate court; one who seeks to invoke the federal habeas power must fairly

present – or do his best to present – the issue to the state's highest tribunal."  Id.  Similarly,

"[r]aising a claim for the first time to the state's highest court on discretionary review is not fair

presentation for purposes of exhaustion."  Gunter, 291 F.3d at 81.

As detailed further herein, applying these principles to the instant case compels this court to conclude that the issues raised in Carnes' habeas petition have been fully exhausted.

**D.      The Grounds Were Raised As Independent Claims**

The Respondent contends that Grounds 4, 5, 6, 7, 9 and 10 in Carnes' habeas petition were not exhausted because the same legal theories were not raised in the state and federal court.  See Gagne, 835 F.2d at 7.  Specifically, the Respondent contends that these claims were only raised in the context of ineffective assistance of counsel claims, and therefore cannot proceed as stand-alone claims in the habeas context.  This argument is not supported by the record.

The claims at issue are as follows:

> (4) petitioner's rights to due process, confrontation and a fair trial were violated when co [defendant] Turner's statement was admitted at trial in violation of his Fifth, Sixth, and Fourteenth Amendment rights;

> (5) petitioner's rights to due process and confrontation pursuant to the Fifth, Sixth and Fourteenth Amendments were violated by the admission of the ballistics certificate for the alleged murder weapon without the analyst that created the certificate, and counsel provided ineffective assistance for failing to object;

> (6) petitioner's constitutional right to be present at all portions of his trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments was violated when he was excluded from all sidebar discussions;

> (7) petitioner's rights pursuant to the Sixth and Fourteenth Amendments were violated with the presentation of false and misleading testimony;

> (9) petitioner's rights to due process under the Fifth and Fourteenth Amendments were violated when the prosecutor withheld exculpatory third-party culprit evidence until after the Supreme Judicial Court heard his case; and

(10) petitioner was denied his rights to due process and a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments because the jury instructions contained substantial constitutional error.

Despite the Respondent's contention, it is clear that these claims were raised as stand-alone claims in Carnes' motion for a new trial.  (See SA I, Ex. F at claims 5, 6, 7, 8, 9, 10).[9] Similarly, they were raised as independent claims in Carnes' appeal of the denial of the motion for new trial under M.G.L. c. 278, § 33E.  (See SA I, Ex. M at 134, 137, 140, 143, 152, 175.)  In denying Carnes' motion for a new trial, the judge addressed these Grounds as either independent claims or as both independent claims and claims of ineffective assistance of counsel.  (See, e.g., SA I, Ex. J at 20-24, 27, 41-46, 50, 52-53).  Therefore, the Respondent's contention that these claims were not raised as independent claims is not supported by the record.

### E.    The Grounds Are Not Procedurally Defaulted

Respondent argues that Grounds 2,[10] 4, 5, 6, 7, 9 and 10 are procedurally defaulted because they were not raised on Carnes' direct appeal, and that his failure to raise them on direct appeal is not excused.  This court concludes that Carnes has alleged sufficient cause for the default and prejudice so that these claims should be deemed to have been exhausted. Consequently, this court concludes that they should not be dismissed and can be reviewed on the merits in connection with Carnes' habeas petition.

---

[9] While the Respondent originally argued that Ground 7 had not been raised in Carnes' motion for a new trial (Resp. Habeas Opp. at 27-29), she subsequently acknowledged that this Ground was presented in both the motion for new trial and application for leave to appeal the denial of the motion for a new trial.  (Resp. Opp to Stay at 21-22).

[10] Ground 2 is "the motion for new trial judge violated petitioner's Fifth, Sixth and Fourteenth Amendment rights by making himself a witness in the proceedings."

**Standard Of Review – Procedural Default**

Under Massachusetts law, "a claim not raised is waived" and is deemed to be procedur-

ally defaulted.  Gunter, 291 F.3d at 78-79.  Where claims are procedurally defaulted, they can

only be reviewed in connection with a habeas petition if the "petitioner shows either cause for

the default and prejudice from the claimed violation of federal law, or that a fundamental mis-

carriage of justice will result if the claim is not considered."  Id. at 78.  "In the habeas context,

cause is a term of art.  To excuse a procedural default, a petitioner's cause must relate to an

objective factor, external to the defense, that thwarted (or at least substantially obstructed) the

efforts of the defendant or his counsel to obey the state's procedural rule.  Mere attorney

error, not amounting to ineffective assistance in a constitutionally significant sense, is insuffi-

cient to constitute cause."  Burks v. Dubois, 55 F.3d 712, 716-17 (1st Cir. 1995) (internal cita-

tions omitted).  Similarly, a petitioner must meet a "high burden of showing actual prejudice

. . . .  To scale this wall, a petitioner must demonstrate 'not merely that the errors at . . . trial

created a possibility of prejudice, but that they worked to his actual and substantial disadvan-

tage, infecting his entire trial with error of constitutional dimensions.'"  Ortiz v. Dubois, 19 F.3d

708, 714 (1st Cir. 1994) (quoting United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584,

1596, 71 L. Ed. 2d 816 (1982)).  Finally, "for habeas purposes the federal 'fundamental mis-

carriage of justice' standard means that petitioner must establish actual innocence."  Simpson

v. Matesanz, 175 F.3d 200, 210 (1st Cir. 1999).  "[P]risoners asserting innocence as a gateway to

defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no

reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"  House v.

Bell, 547 U.S. 518, 536-37, 126 S. Ct. 2064, 2076-77, 165 L. Ed. 2d 21 (2006) (quoting Schlup v.

<u>Delo</u>, 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995)).  Review of a case in light of a claim of actual innocence occurs only in the "extraordinary case."  <u>Id.</u> at 538, 126 S. Ct. at 2077.  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  <u>Schlup v. Delo</u>, 513 U.S. at 324, 115 S. Ct. at 865.

### Carnes' Has Alleged Cause For His Default

"[I]f the procedural default is the result of ineffective assistance of counsel [under the standard established in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the Sixth Amendment itself requires that responsibility for the default be imputed to the State, which may not 'conduc[t] trials at which persons who faces incarceration must defend themselves without adequate legal assistance.'" <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986) (quoting <u>Cuyler v. Sullivan</u>, 466 U.S. 335, 344, 100 S. Ct. 1708, 1716, 64 L. Ed. 2d 333 (1980)).  Thus, "ineffective assistance of counsel, so severe that it violates the Sixth Amendment, may constitute sufficient cause to excuse a procedural default as long as the petitioner exhausted his ineffective assistance claim in state court." <u>Janosky v. St. Amand</u>, 594 F.3d 39, 44 (1st Cir. 2010).  <u>See</u> <u>also</u> <u>Evitts v. Lucey</u>, 469 U.S. 387, 396, 105 S. Ct. 830, 836, 83 L. Ed. 2d 821 (1985) ("A first appeal as of right . . . is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney.").  In the instant case the Respondent does not deny that Carnes raised his claim of ineffective assistance of counsel with respect to Grounds 4, 5, 6, 7 and 10 in his motion for new trial and his appeal therefrom.  (<u>See</u> SA I, Ex. F at ¶¶ 2-3; <u>see</u> Ex. M).  It was appropriate for him

to raise his claims of ineffective assistance of counsel at the motion for a new trial stage.  See

Commonwealth v. Zinser, 446 Mass. 807, 810-11, 847 N.E.2d 1095, 1098 (2006) ("the preferred

method for raising a claim of ineffective assistance of counsel is through a motion for a new

trial.").  See also Lee v. Corsini, 777 F.3d 46, 60-61 (1st Cir. 2015) (while ineffective assistance of

trial counsel is usually raised in a motion for a new trial, in capital cases the motion for a new

trial is frequently consolidated with the direct appeal).[11]

In regard to Ground 9, the Petitioner contends that it was not raised at trial or on direct

appeal because the claim itself did not arise until after Carnes' direct appeal brief was filed.

Carnes raised the issue at the first available opportunity and as such, this court finds that

Carnes is able to establish cause for a procedural default.  See Carrier, 477 U.S. at 488, 106 S. Ct.

at 2645 (petitioner is able to establish cause for procedural default if "prisoner can show that

some objective factor external to the defense impeded counsel's efforts to comply with the

State's procedural rule" such as "a showing that the factual or legal basis for a claim was not

reasonably available to counsel or that 'some interference'. . . made compliance impracti-

cable[.]" (internal citations omitted)).

Similarly, the Petitioner contends that his second Ground for relief was exhausted

because it did not arise until the motion judge's decision denying his motion for a new trial, and

Carnes raised it by filing a motion to reconsider with the motion judge.  After that motion was

denied, he included the Ground in his appeal under M.G.L. c. 278, § 33E.  Under the facts of this

---

[11]  In the instant case, Carnes' motion for a new trial was not filed until after his direct appeal had been
decided.

case, the motion for reconsideration followed by the ALOFAR is sufficient.  This court concludes that Ground 2 is fully exhausted.

This Ground is based on the motion judge's ruling denying Carnes' motion for a new trial challenging the jury instruction on joint venture.  In his decision, the motion judge acknowledged that if the transcript "correctly reflected what I said, [Carnes] might have a point.  But the transcript does not accurately reflect the joint venture instruction given by me.  I have listened to the tape of the instructions."  (SA I, Ex. J at 42).  The judge then went on to conclude that he had correctly instructed the jury.  (Id.).

After receiving the opinion denying the motion for a new trial, Carnes filed a motion with the judge asking him to reconsider his ruling on the grounds that he had improperly made himself a witness in the proceeding.  (SA I, Ex. A at Nos. 105-107).   After the motion was denied, Carnes included this claim in his ALOFAR.  (See SA I, Ex. M at 52-54).  Thus, Carnes gave the state "the first opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Josselyn, 475 F.3d at 2 (quoting Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995)).  In sum, this court finds that Carnes properly included Ground 2 in his ALOFAR, and that the claim has been exhausted.

For all these reasons, Carnes has alleged sufficient facts to establish "cause" for his failure to include Grounds 2, 4, 5, 6, 9 and 10 of his habeas petition in his direct appeal.

### The ALOFAR Was Not Denied On An Independent State Law Basis

Next, the Respondent argues that Carnes' claims raised in his motion for a new trial cannot be reviewed by this court because they were rejected by the state court on the independent and adequate state-law ground of procedural default.  (See Resp. Habeas Opp. at 32).

[41]

Carnes argues that this court cannot conclude that his claims were rejected on the grounds of procedural default because the Single Justice failed to delineate the basis for the denial of Carnes' ALOFAR.  This court agrees with the Petitioner.

Federal habeas review of the merits of a claim is precluded if there is an independent and adequate state law ground supporting the state court's decision, and "[t]he state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits."  Walker v. Martin, 562 U.S. 307, 315, 131 S. Ct. 1120, 1127, 179 L. Ed. 2d 62 (2011).  A state procedural rule is adequate to preclude federal merits review only if "the state regularly follows the rule and has not waived it by relying on some other ground."  Lee v. Corsini, 777 F.3d 46, 54 (1st Cir. 2015) (quoting Jewett v. Brady, 634 F.3d 67, 76 (1st Cir. 2011)) (additional citation omitted).

In Massachusetts, a defendant convicted of first degree murder has the right under M.G.L. c. 278, § 33E to appeal from his conviction to the full bench of the SJC, where the court conducts a plenary review and considers "the whole case broadly to determine whether there was any miscarriage of justice."  Dickerson v. Latessa, 872 F.2d 1116, 1117-18 (1st Cir. 1989) (citation omitted).  Thereafter, a defendant must obtain leave from a Single Justice of the SJC to appeal from the denial of a motion for post-conviction relief to the full bench of the SJC.  Id. at 1118.  Under § 33E, a defendant is only entitled to further appellate review of the denial of a motion if the "gatekeeper" finds that the appeal presents a "new" and "substantial" question which ought to be determined by the full court.  Id.

Where the Single Justice determines that an issue is not "new" within the meaning of M.G.L. c. 278, § 33E, this finding amounts to a procedural default, which is "the classic example

[42]

of an independent and adequate state ground." <u>Simpson</u>, 175 F.3d at 207.  On the other hand,

the Single Justice may instead find "that the issue is in fact new but nevertheless insubstantial,

based on an application of the substantive legal standard."  <u>See</u> <u>Lee</u>, 777 F.3d at 55.  This

constitutes a resolution of "the claims on the merits and does not signal procedural default."

<u>Id.</u> (quoting <u>Jewett</u>, 634 F.3d at 76).  Thus, "it is only the failure to satisfy the 'new' prong of the

§ 33E rule that signals procedural default."  <u>Id.</u> at 57.

      In the instant case, the Single Justice did not indicate in any fashion whether he was

denying the ALOFAR because Carnes' claims raised in his motion for a new trial were not new,

or whether he was proceeding on the basis that they were insubstantial.  Logically, however,

since all of the claims, including the claims of ineffective assistance of counsel, were being

raised for the first time in Carnes' motion for a new trial, there is no basis for assuming that the

Single Justice had concluded that the claims were not "new."  As detailed above, it is usual for

claims of ineffective assistance of trial counsel to be raised for the first time in a motion for a

new trial.  Neither party has explained in their pleadings why Carnes' motion for a new trial was

not consolidated with his direct appeal, but the record is clear that the issues raised in the

motion for a new trial were addressed on the merits by the trial judge, but not addressed on

the merits by an appellate court.  Under such circumstances, the record does not support a

finding that the denial of Carnes' motion for a new trial was based on an independent state

ground, <u>i.e.</u>, because the issues raised were not "new."  Therefore, the Single Justice's denial of

Carnes' ALOFAR did not result in the issues raised therein being procedurally defaulted.

**The Petitioner Has Sufficiently Alleged Prejudice**

As detailed above, Carnes must establish "cause and prejudice" to excuse any procedural default.  In the instant case, neither party seriously argues the issue of prejudice.  As evidenced from the description of the grounds raised above, Carnes has alleged that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitution dimensions."  Ortiz, 19 F.3d at 714 (citation omitted).  It is Carnes' contention that he is actually innocent of the crimes for which he has been convicted.  The alleged errors relate to virtually every aspect of the conduct of the trial as well as the post-trial conduct of the prosecutor and the trial judge.  Under such circumstances, the Petitioner has sufficiently alleged prejudice to satisfy any claim that he failed to exhaust his rights in state court by not raising the claims in his direct appeal.

## IV.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Petitioner's request to stay these proceedings (Docket No. 35) be ALLOWED so that Carnes may present his conflict of interest claim to the state court. This court further concludes that the other Grounds raised in Carnes' petition are fully exhausted.  Therefore, this court recommends that the Respondent's request that these other claims be dismissed as unexhausted be DENIED.[12]

---

[12]  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart,

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).