UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CALVIN CARNES, JR.,<br><br>        Petitioner,<br><br>        v.<br><br>KELLY RYAN,<br><br>        Respondent. | No. 1:15-cv-11858-IT-JDH |

## MEMORANDUM AND ORDER ON PETITIONER'S REQUEST FOR LEAVE TO CONDUCT DISCOVERY IN CONJUNCTION WITH HIS CLAIM UNDER § 2254

HEDGES, M.J.

In 2015, petitioner Calvin Carnes, Jr., who is serving a life sentence for convictions obtained in Suffolk Superior Court, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case was stayed in 2018 to allow Mr. Carnes to move for a new trial in state court for purposes of exhausting one of the claims raised in his petition. For over six years, the stay was repeatedly extended to permit Mr. Carnes additional time to seek discovery pertinent to the preparation of his motion for a new trial. Mr. Carnes' efforts to obtain this discovery were, however, only partially successful.

On May 7, 2025, Mr. Carnes filed a motion for leave to conduct discovery, which is now pending before the Court, and the stay subsequently expired. Mr. Carnes contends that his discovery motion is supported by good cause because the discovery he seeks would provide significant support for many of the claims raised in his habeas petition, and because he has exhausted all other avenues for obtaining this information. The respondent argues that Mr. Carnes' motion should be denied because, as relevant here, Mr. Carnes has not yet exhausted his

1

ability to obtain this discovery by filing a motion for post-conviction discovery in state court.

Because I agree with the respondent on this point, and for the reasons explained below, Mr.

Carnes' motion for discovery is denied without prejudice to his ability to file a renewed motion

after exhausting all state court avenues for relief.  Additionally, this case will be stayed for 90

days to permit Mr. Carnes to commence state court proceedings.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On June 18, 2008, following a twenty-seven-day jury trial before Judge Patrick F. Brady

in Suffolk Superior Court, Mr. Carnes was convicted of four counts of murder in the first degree,

three counts of armed robbery, one count of larceny over $250, two counts of carrying a firearm

without a license, and one count of possessing a large capacity firearm.  Docket No. 10

(Respondent's Supplemental Answer, "RSA"), Vol. I, Ex. A.[1]  Mr. Carnes was sentenced to four

terms of life in prison without the possibility of parole, with concurrent sentences for the armed

robbery, larceny, and firearm convictions.  *Id.*  On September 9, 2010, the Massachusetts

Supreme Judicial Court ("SJC") affirmed his convictions.  *Commonwealth v. Carnes*, 933

N.E.2d 598, 602 (Mass. 2010).

On December 2, 2011, Mr. Carnes filed a motion for a new trial and request for an

evidentiary hearing in Suffolk Superior Court.  RSA, Vol. I, Ex. F.  An evidentiary hearing was

held on September 27, 2012.  *Id.* Vol. I, Ex. J at 4.  Nearly one year later, on August 2, 2013, Mr.

Carnes filed a motion for a further evidentiary hearing.  *Id.* Vol. I, Ex. G.  Judge Brady denied

both motions on October 7, 2013.  *Id.* Vol. I, Exs. J, K.  On May 16, 2014, Mr. Carnes filed a

"gatekeeper" application with the SJC seeking leave to obtain further appellate review of the

---

[1] Judge Brady presided over the majority of the trial, but he was replaced by Judge Margaret
Hinkle during jury deliberations due to illness.  RSA, Vol. I, Ex. A.

denial of his motion for a new trial.  *Id.* Vol. I, Exs. L, M.  While the gatekeeper petition was pending, Judge Brady wrote a letter of recommendation, dated August 15, 2014, in support of the judicial nomination of then-Assistant District Attorney Joshua Wall, the lead prosecutor in Mr. Carnes' trial.  Docket No. 13-1 at 119-120.[2]  In the letter, Judge Brady described Attorney Wall's prosecution of Mr. Carnes' case as "exemplary" and credited Attorney Wall for greatly improving the professionalism of the District Attorney's office.  *Id.*  Mr. Carnes subsequently learned of this letter, and, on March 26, 2015, he filed with the SJC a motion to remand his motion for a new trial to the trial court for full re-evaluation.  RSA, Vol. I, Ex. N.  As grounds for his request, Mr. Carnes argued that the letter of recommendation revealed that Judge Brady "[held] an apparent bias in favor of the Commonwealth, and more particularly, Joshua Wall, who was the trial prosecutor on the Carnes case."  *Id.* Vol. I, Ex. N at 1.  On May 12, 2015, a single justice of the SJC denied Mr. Carnes' gatekeeper petition.  *Id.* Vol. I, Ex. Q.

On May 15, 2015, Mr. Carnes filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting seventeen grounds for relief (the "claims").  Docket Nos. 1, 1-2.  In his seventeenth claim, Mr. Carnes alleged that his federal due process rights had been violated because Judge Brady had an apparent conflict of interest when he denied Mr. Carnes' motions for a new trial and further evidentiary hearing.  Docket No. 1-2 at 24-25.  The respondent opposed the petition, arguing, as relevant here, that it should be denied because Mr. Carnes failed to exhaust several claims, including his conflict-of-interest claim, in state court.  *See* Docket No. 17 at 30-32.  The case was referred to Magistrate Judge Dein, Docket No. 21, who held a hearing on the petition on April 14, 2016, Docket No. 32.  With leave of Court, Mr. Carnes filed a

---

[2] The record indicates that Attorney Wall did not represent the Commonwealth in connection with Mr. Carnes' motion for a new trial.  *See* RSA, Vol. I, Ex. H at 109 (signature block on Commonwealth's opposition brief).

supplemental brief after the hearing in which he conceded that he had not exhausted his conflict-of-interest claim in state court but argued that he had exhausted all other claims. Docket No. 35 at 1. Mr. Carnes thus requested that the Court stay these proceedings to allow him to exhaust his conflict-of-interest claim by filing a second motion for a new trial in state court. *Id.* at 44. The respondent opposed the request. Docket No. 36.

In a Report and Recommendation issued on June 6, 2018, Judge Dein agreed that Mr. Carnes had exhausted all claims except for his conflict-of-interest claim. Docket No. 37 at 3. Noting the difficulty of the case, Mr. Carnes' lack of a prior criminal record, and the lengthy jury deliberations, Judge Dein observed that Judge Brady, who rejected all of the issues raised in Mr. Carnes' motion for a new trial, "exercised considerable discretion in his rulings, made a number of credibility determinations in rejecting evidence proffered on behalf of [Mr.] Carnes, and made assumptions about trial strategies." *Id.* at 32. Judge Dein thus concluded that Mr. Carnes' conflict-of-interest claim was potentially meritorious and that he had established good cause for failing to exhaust it in state court. *See id.* at 29-34. Accordingly, Judge Dein recommended staying the proceeding so Mr. Carnes could present his conflict-of-interest claim to the state court. *Id.* at 44. After receiving the respondent's objection, Docket No. 38, and Mr. Carnes' reply, Docket No. 39, the Court accepted and adopted Judge Dein's Report and Recommendation without modification, Docket No. 40. On September 17, 2018, the Court entered a stay and ordered Mr. Carnes to commence a state court proceeding concerning his conflict-of-interest claim within 30 days. Docket No. 41.

Mr. Carnes did not file a motion for new trial within 30 days of the entry of the stay. In a status report filed on January 31, 2019, Mr. Carnes explained that he had begun drafting the motion but was awaiting a response to a public records request he had filed with the Boston

Police Department.  Docket No. 43.  Thus, he asked the Court to extend the stay by 90 days to permit him to finish drafting the motion for a new trial and file it in state court.  *Id.*  The Court allowed that request.  Docket No. 44.  For nearly six years thereafter, Mr. Carnes continued filing status reports requesting extensions of the stay, indicating in each report that he was continuing to gather evidence or otherwise preparing to file in state court a motion for a new trial and, beginning in 2023, a motion for post-conviction discovery.  Docket Nos. 45, 47, 50, 52, 55, 57, 59, 61, 63, 65, 67, 69, 71, 73, 75, 77, 79, 81, 83, 88, 91.  The Court allowed each of Mr. Carnes' requests to extend the stay.  Docket Nos. 46, 48, 51, 53, 56, 58, 60, 62, 66, 68, 70, 72, 74, 76, 78, 80, 82, 84, 89.

After this case was referred to the undersigned in September 2024, Docket No. 90, I scheduled a status conference for January 7, 2025, Docket No. 92.  At the status conference, Mr. Carnes' counsel detailed the various efforts she had made to obtain discovery pertinent to the motion for a new trial she was preparing, including public records requests and extensive communications with the district attorney's office.  Citing the limited success of these efforts, Mr. Carnes' counsel indicated that she was considering filing either a motion for discovery in this Court or a joint motion for a new trial and post-conviction discovery in state court. Accordingly, on January 13, 2025, I extended the stay for 120 days to permit Mr. Carnes to prepare and file either a motion for a new trial in state court or a motion for discovery in this Court.  Docket No. 94.  On May 7, 2025, Mr. Carnes filed the instant motion for discovery, Docket No. 95, which the respondent opposed, Docket No. 98.

Following a hearing on July 30, 2025, I took Mr. Carnes' discovery motion under advisement and granted the parties leave to submit supplemental briefs addressing certain issues

raised at the hearing.  Docket No. 106.  The parties timely filed supplemental briefs in August 2025.  Docket Nos. 107, 108.[3]

## II.    LEGAL FRAMEWORK

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Instead, "the availability of discovery is [] circumscribed by Rule 6 of the Rules Governing § 2254 Cases." *Teti v. Bender*, 507 F.3d 50, 60 (1st Cir. 2007).  Pursuant to Rule 6, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."  Rule 6(a).  A petitioner seeking discovery must not only provide reasons for the requested discovery, but must also "include any proposed interrogatories and requests for admission, and [] specify any requested documents."  Rule 6(b).

To demonstrate "good cause" for such discovery, a petitioner "must present 'specific allegations that give a court reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'"  *Donald v. Spencer*, 656 F.3d 14, 16 (1st Cir. 2011) (quoting *Teti*, 507 F.3d at 60).  The court is not required to credit allegations that are "pure speculation."  *Id.* at 18.  The court may also deny discovery where there is no suggestion that discovery would help establish a claim for relief.  *See Teti*, 507 F.3d at 60.  "A habeas proceeding is not a fishing expedition."  *Id.*

## III.    ANALYSIS

Mr. Carnes requests leave to serve subpoenas on five entities, to access all physical evidence relating to his case for purposes of independent testing, and to access his entire case

---

[3] Mr. Carnes requested leave to file a reply brief before the hearing.  Docket No. 102.  I denied that request, explaining that I would permit supplemental briefing after the hearing if appropriate.  Docket No. 104.

file.  Docket No. 95 at 4-9.[4]  The respondent argues that Mr. Carnes' discovery motion should be

denied for two overarching reasons.  *See* Docket Nos. 98, 108.  First, the respondent contends

that to the extent Mr. Carnes seeks discovery related to exhausted claims, his motion should be

denied because habeas review under 28 U.S.C. § 2254(d) "is limited to the record that was

before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S.

170, 181 (2011); *see* Docket No. 98 at 8-9.  Second, the respondent argues that Mr. Carnes has

failed to establish good cause for his discovery request because he has not yet exhausted his

conflict-of-interest claim and has not diligently sought discovery concerning his exhausted

claims in state court.  *See* Docket No. 98 at 9-13.  These arguments will be addressed in turn.

### A.  *Cullen v. Pinholster*

The respondent argues that Mr. Carnes' discovery motion should be denied because, in

its view, the Supreme Court's decision in *Pinholster* "prevents petitioner from expanding the

record beyond what was presented to the Massachusetts state courts for any claims that the state

courts denied on the merits."  Docket No. 98 at 8.  This argument overstates the breadth of

*Pinholster*'s holding.  The *Pinholster* Court did not hold that a federal habeas petitioner can

---

[4] Mr. Carnes lodges thirty-six discrete discovery requests in total, several of which include numerous subcomponents.  *See* Docket No. 95 at 5-9.  Specifically, Mr. Carnes seeks documents concerning Boston Regional Intelligence Center ("BRIC") Reports (*id.* at 5, 12-13), Cell Site Location Information ("CSLI") (*id.* at 5-6, 13-16, 27), juror records (*id.* at 6, 19), police reports (*id.* at 6, 10), complete crime laboratory files (*id.* at 6, 22, 26-27), grand jury minutes (*id.* at 6-7), curriculum vitae of expert witnesses who testified for the Commonwealth at trial (*id.* at 7, 13-15), jury instruction tapes (*id.* at 7, 23), jail call records (*id.* at 7, 12, 24), documents concerning the Cynthia Small letters produced during post-conviction litigation (*id.* at 7, 11-12, 25), records concerning cash payments to "key" witnesses for the Commonwealth (*id.* at 7-8, 12, 17, 24-25), documents concerning assistance the Commonwealth may have provided to co-defendant Robert Turner (*id.* at 8, 12, 25), documents concerning communications with Craig Smith, the prisoner to whom Mr. Turner allegedly confessed committing the murders (*id.* at 8, 17), Judicial Nominating Committee files (*id.* at 8, 27-28), Board of Bar Overseers files (*id.* at 8), and any other "exculpatory evidence held by the Commonwealth" (*id.* at 9), among other items.

*never* expand the state court record for claims the state court adjudicated on the merits.  The

Court instead addressed a narrower issue: "the scope of the record for a § 2254(d)(1) inquiry."

*Pinholster*, 563 U.S. at 180.  *Pinholster*'s holding must be understood in the context of this

provision.

Section 2254(d) is a gatekeeping provision that limits the circumstances in which a

federal court can grant habeas relief to a petitioner in custody pursuant to a state court judgment.

*Sepulveda v. United States*, 330 F.3d 55, 66 (1st Cir. 2003).  It provides in full:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless the adjudication of the claim:
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
>     application of, clearly established Federal law, as determined by the Supreme
>     Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
>     facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  In *Pinholster*, the Supreme Court considered whether the Ninth Circuit

erred when it considered new evidence—which the district court received at an evidentiary

hearing held under 28 U.S.C. § 2254(e)(2) and which had not been considered by the state

court—in determining, under 28 U.S.C. § 2254(d)(1), that the state court had unreasonably

applied *Strickland v. Washington*, 466 U.S. 668 (1984) when it rejected the petitioner's

ineffective assistance of counsel claim.  *See Pinholster*, 563 U.S. at 180.  The Court answered

that question in the affirmative.  Reasoning that Section 2254(d)(1)'s use of past tense,

"backward-looking language requires an examination of the state-court decision at the time it

was made," the Court held that "review under § 2254(d)(1) is limited to the record that was

before the state court that adjudicated the claim on the merits." *Id.* at 181-82.  Review under

Section 2254(d)(2) is similarly limited.  *Garuti v. Roden*, 733 F.3d 18, 23 (1st Cir. 2013).

Citing this limitation, the First Circuit has held that if a petitioner's claims were

adjudicated on the merits by the state court, he cannot obtain a Section 2254(e) evidentiary

hearing unless he first "clear[s] the hurdle of § 2254(d) based on the record that was before the

state court." *Jackson v. Marshall*, 864 F.3d 1, 14 (1st Cir. 2017).  While the First Circuit has not

yet addressed *Pinholster*'s impact on discovery motions, many federal courts to have considered

the issue have held that a habeas petitioner must likewise satisfy § 2254(d) before obtaining

discovery under Rule 6.  *See, e.g.*, *Caudill v. Conover*, 871 F. Supp. 2d 639, 645 (E.D. Ky. 2012)

("It would defy logic to preclude a petitioner from developing factual information in an

evidentiary hearing, but allow her to introduce the same factual information via discovery and

expansion of the record.  Whether obtained during an evidentiary hearing or through post-

conviction discovery, new evidence has no bearing on a federal court's review under

§ 2254(d)(1)."); *see also Durham v. Marquis*, No. 1:18-cv-2520, 2021 WL 848964 at *3 (N.D.

Ohio Mar. 5, 2021) (holding that *Pinholster* bars petitioner's motion for discovery related to his

*Strickland* claim and collecting cases to this effect); *but see, e.g. Williams v. Wetzel*, No. 11-cv-

4681, 2021 WL 1224130, at *3-4 (E.D. Pa. Mar. 31, 2021) (holding that *Pinholster* did not bar

petitioner's motion for discovery related to his *Brady* claim) (collecting cases).

*Pinholster* thus curtails habeas petitioners' ability to introduce new evidence in a federal

habeas proceeding—whether through a Rule 6 discovery motion or a Section 2254(e) hearing—

but it does not prohibit them from doing so.  The *Pinholster* majority noted, for instance, that a

petitioner may obtain an evidentiary hearing under Section 2254(e)(2) if his claims were not

adjudicated on the merits by the state court, such that Section 2254(d)(1) does not apply.  *See*

*Pinholster*, 563 U.S. at 185-86. And Justice Breyer noted in his *Pinholster* partial concurrence that a federal habeas court may be able to consider evidence that was not before the state court even where Section 2254(d)(1) does apply. *See id.* at 204-06 (Breyer, J., concurring in part and dissenting in part). If, for example, a federal habeas court were to conclude that the state court unreasonably applied clearly established federal law to one prong of a petitioner's constitutional claim (e.g., in concluding that counsel's assistance was not "inadequate" under *Strickland*), then the habeas court might be required to hold an evidentiary hearing to determine the ultimate merits of the petitioner's constitutional claim (e.g., whether, under *Strickland*, the petitioner was "prejudiced" by his counsel's inadequacy). *See id.* at 205 (Breyer, J., concurring in part and dissenting in part).

The First Circuit's decision in *Sanchez v. Roden* is instructive on this point. 753 F.3d 279 (1st Cir. 2014). There, the petitioner alleged that the state prosecutor violated his rights under the Fourteenth Amendment's Equal Protection Clause by exercising peremptory challenges based on the race of prospective jurors, in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). *See Sanchez*, 753 F.3d at 289-90. *Batson* challenges are subject to a three-pronged burden-shifting test: if a defendant can make out a prima facie case of discrimination, the burden shifts to the prosecutor to provide a race-neutral explanation for challenging the excluded jurors, which the trial judge must then consider in determining whether the defendant has established purposeful discrimination. *See id.* at 291-92. In *Sanchez*, the state court had rejected the petitioner's *Batson* challenge at the first step, concluding that he failed to make out a prima facie case of discrimination. *See id.* at 288.

The First Circuit held that the state court "unreasonably applied *Batson*'s first prong" in reaching this conclusion because it "wholly failed to consider all of the circumstances bearing on

10

potential racial discrimination," in violation of *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008). *Sanchez*, 753 F.3d at 299. This determination did not, however, end the First Circuit's inquiry. *Id.* at 300. Because the state court trial judge did not proceed to the second *Batson* prong and require the prosecutor to present a race-neutral explanation for the peremptory challenge at issue, the First Circuit was unable to determine whether the challenge was "*in fact* racially motivated and, therefore, violative of *Batson*," such that the petitioner was entitled to habeas relief. *Id.* at 307-08 (emphasis added). Accordingly, the First Circuit remanded the case to the district court with instructions "to hold an evidentiary hearing and complete the *Batson* inquiry." *Id.* at 308.

Other federal courts of appeal have followed a similar approach in comparable circumstances. *See Madison v. Comm'r, Alabama Dep't of Corr.*, 761 F.3d 1240, 1249-50 & n.9 (11th Cir. 2014) (evidentiary hearing "was required" where "state court unreasonably determined" that petitioner had not made out a prima facie case of discrimination); *Garner v. Lee*, 908 F.3d 845, 860 (2d Cir. 2018) (district court did not err in holding evidentiary hearing after concluding that state court unreasonably applied *Strickland*'s "deficiency" prong); *Mosley v. Atchison*, 689 F.3d 838, 853-54 (7th Cir. 2012) (affirming district court's conclusion that the state court unreasonably applied *Strickland*, but remanding case to district court with instructions to evaluate new evidence received at Section 2254(e) hearing to determine whether petitioner was in custody in violation of federal law); *cf. Burr v. Jackson*, 19 F.4th 395, 417 (4th Cir. 2021) (noting, in the context of a *Brady* claim, "we have held, even after *Pinholster*, that a claim was *not* adjudicated on the merits for purposes of § 2254(d) when the state court made its decision on a materially incomplete record" (brackets and quotation marks omitted)).

As the foregoing discussion illustrates, the question of whether *Pinholster* limits or bars Mr. Carnes' discovery requests is intertwined with the merits of his habeas petition. Answering

11

this question will require a multistep analysis.  First, the Court must determine which of the seventeen claims raised in Mr. Carnes' habeas petition each of his thirty-six discovery requests relates to.  *See Teti*, 507 F.3d at 60 (generalized request for discovery does not comply with specific requirements of Rule 6(b)); *Wilborn v. Ryan*, 15-cv-12827-RGS, 2016 WL 1170960, at *2 (D. Mass. Mar. 23, 2016) (denying Rule 6 discovery because "although petitioner identifies what he seeks to obtain …. he does not articulate the reasons why it would show ineffective assistance or actual innocence").  The Court must then determine which of those claims were adjudicated on the merits by the state court, such that Section 2254(d) applies.[5]

If Mr. Carnes can establish that one or more of his claims was not adjudicated on the merits by the state court, *Pinholster* does not bar him from obtaining discovery related to that claim.  *See Pinholster*, 563 U.S. at 185-86.  If Mr. Carnes cannot make this showing, however, the Court must next determine, under Section 2254(d), whether the state court's adjudication of each of Mr. Carnes' claims resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1)-(2).  If Mr. Carnes cannot "clear the hurdle of § 2254(d) based on the record that was before the state court," he cannot obtain discovery or habeas relief.  *Jackson*, 864 F.3d at 14.  But if Mr. Carnes satisfies Section 2254(d) as to any

---

[5] The Supreme Court expansively interpreted the term "adjudicated on the merits" in *Harrington v. Richter*, holding that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  562 U.S. 86, 99 (2011).  The core inquiry is whether "there is a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  *Moore v. Dickhaut*, 842 F.3d 97, 100 (1st Cir. 2016) (quotation marks omitted).  "In other words, [Section 2254] requires only adjudication, not explanation."  *Id.* (quotation marks omitted).

claim, and if the Court cannot determine based on the state court record alone whether Mr. Carnes "is in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), then Mr. Carnes may be able to obtain discovery under Rule 6. *See Jackson*, 864 F.3d at 14.

At this juncture, the Court declines to address these merits issues—which the parties have not squarely addressed in their briefing on Mr. Carnes' discovery motion—because, as explained below, the respondent has identified an independent reason why Mr. Carnes' motion must be denied: he has not established good cause for seeking discovery in this Court. Mr. Carnes' discovery motion will accordingly be denied without prejudice on that basis. Should Mr. Carnes later refile a discovery motion supported by good cause, the Court will consider that motion in tandem with the issues of whether Mr. Carnes' claims were adjudicated on the merits by the state court and, if so, whether Mr. Carnes has satisfied Section 2554(d) as to any of those claims, such that *Pinholster* does not bar his request for discovery. *Cf., e.g.*, *Davis v. Bobby*, No. 2:10-cv-107, 2017 WL 2544083 at *5-6 (S.D. Ohio June 13, 2017) (denying discovery motion without prejudice, "subject to reconsideration or renewal should the Court" determine that any of the petitioner's claims were not adjudicated on the merits by the state court, or that the state court adjudication was not reasonable under Section 2254(d)) (collecting cases following same approach).

## B.  Good Cause

Mr. Carnes argues that he has established good cause for the discovery he requests because it "relates to plainly exculpatory information that was withheld from [him] prior to trial." Docket No. 95 at 24 (comma omitted). If permitted to conduct discovery, Mr. Carnes contends, he will be able to fully develop his claims and demonstrate his entitlement to relief. *Id.*

13

at 33.  Mr. Carnes further asserts that he "has exhausted every avenue possible for obtaining the information he seeks in state court . . . and has been denied at every turn."  *Id*.  The respondent counters that Mr. Carnes' motion should be denied because he has not yet sought in state court the discovery he seeks in this Court, and, regardless, because his request is not supported by good cause.  Docket No. 98 at 7-8.

Indeed, Mr. Carnes has not exhausted the principal state-court vehicle for obtaining the discovery he seeks: A motion for post-conviction discovery under Massachusetts Rule of Criminal Procedure 30(c)(4).  Mr. Carnes argues that he is unable to obtain much of the discovery he seeks because Rule 30(c)(4) "permits discovery only in the possession of the Commonwealth."  Docket No. 95 at 33; *see id*. at 28-29.  But this argument misapprehends the reach of Rule 30(c)(4).  So long as "affidavits filed by the moving party under subdivision (c)(3) establish a prima facie case for relief," Rule 30(c)(4) provides that the motion judge "*may authorize such discovery as is deemed appropriate*, subject to appropriate protective order."  Mass. R. Crim. P. 30(c)(4) (emphasis added).  Such discovery "may include orders to produce evidence or statements, as provided in the Rules of Criminal Procedure, and in an unusual case *may include depositions or other modes of discovery provided in the Rules of Civil Procedure*."  *See* Reporters' Notes to Mass. R. Crim. P. 30 (emphasis added).  Indeed, Massachusetts courts have authorized post-conviction third-party discovery in appropriate circumstances.  *See Commonwealth v. Holbrook*, 125 N.E.3d 696, 710-11 (Mass. 2019) (remanding to superior court to allow defendant to conduct third-party discovery of e-mail service providers pursuant to Rule 30); *Commonwealth v. Jenkins,* No. 0384CR10364, 2021 WL 6053860, at *10 (Mass. Super. Dec. 20, 2021) (noting that court granted post-conviction third-

14

party discovery from the Nashua Street Jail, Boston Police Department, and Sheriff's department).

To be sure, Mr. Carnes has made significant efforts to obtain discovery through other avenues. He included many of the thirty-six discovery requests in the instant motion in the post-conviction discovery motions he filed in connection with his original motion for a new trial. *See* Docket No. 107 at 6; RSA, Vol. 1, Ex. G. And Mr. Carnes has sought discovery through various other means, including public records requests, requests made to the Suffolk County District Attorney's Office ("SCDAO"), and motions for funds to retain experts to review the forensic evidence in this case. *See* Docket No. 95 at 16-23. But the fact remains that Mr. Carnes has not filed *any* post-conviction discovery motions in state court since the denial of his motions for a new trial and a further evidentiary hearing in 2013. *See* RSA, Vol. 1, Ex. A. Information Mr. Carnes acquired *after* the denial of those motions undergirds many of the discovery requests he asserts for the first time in this Court—including requests for documents pertaining to the judicial nomination and confirmation of then-Attorney Wall, who is now a superior court justice; Boston Regional Intelligence Center ("BRIC") reports; and cell site location information ("CSLI"). *See* Docket No. 95 at 13, 19 (response to 2019 public records request "suggests" Boston Police possess relevant BRIC records); *id.* at 16 (2021 review of case file in SCDAO custody revealed missing CSLI data); *id.* at 18 (Judge Brady's denial of new trial and discovery motions "is now cast in a new light where Carnes has now learned that [he] wrote a letter of recommendation for" the trial prosecutor).

This Court is "not an alternative forum for trying facts and issues which [Mr. Carnes] made insufficient effort to pursue in state proceedings." *Pinholster*, 563 U.S. at 186 (quotation marks omitted). Thus, Mr. Carnes must seek this discovery in state court before attempting to

further develop his claims in this Court.  *See Hooks v. Workman*, 606 F.3d 715, 730 n.14 (10th Cir. 2010) ("Only when a petitioner diligently sought to develop the factual basis of a habeas claim in state court can he utilize the procedures set out in Rules 6 and 7"); *Calderon v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 98 F.3d 1102, 1106 (9th Cir. 1996) (denying Rule 6 discovery, in part because petitioner did not seek desired discovery from state court).[6]

On August 22, 2018, the Court allowed Mr. Carnes' motion to stay these proceedings so that he could exhaust his conflict-of-interest claim in state court.  Docket No. 40.  For over six years, the Court repeatedly extended that stay as Mr. Carnes filed status reports indicating that he was in the process of drafting motions for a new trial and post-conviction discovery, and that such motions would be filed soon.  Yet Mr. Carnes has not filed any such motion in state court.  While a district court may "stay [a mixed] petition and hold it in abeyance" to permit the

---

[6] Mr. Carnes suggests that because he alleges that a current justice of the Massachusetts Superior Court "engaged in rampant prosecutorial misconduct" before taking the bench, and that a former justice of the same court "turned a blind eye" to that conduct, "there is a reasonable basis" for questioning the impartiality of "any member of the superior cour[t]."  Docket No. 107 at 14-16. To the extent that Mr. Carnes argues that no justice on the Massachusetts Superior Court is capable of impartially adjudicating a Rule 30 motion, that argument is without merit.  As Mr. Carnes acknowledges, the Massachusetts Declaration of Rights enshrines "the right of every citizen to be tried by judges as free, impartial and independent as the lot of humanity will admit." Mass. Const. pt. 1, art. 29.  The Code of Judicial Conduct thus requires that a judge "disqualify himself or herself in any proceeding in which the judge cannot be impartial or the judge's impartiality might reasonably be questioned."  S.J.C. Rule 3.09, Canon 2, Rule 2.11(A) (Mass. 2016); *see Commonwealth v. Morgan RV Resorts, LLC*, 992 N.E.2d 369, 375 (Mass. App. Ct. 2013).  If Mr. Carnes has concerns about the judge to whom his Rule 30 motion is ultimately assigned, he may address those concerns by filing a motion to disqualify that judge.  If he is dissatisfied with the resolution of that motion, he may file an appeal.  But Mr. Carnes' speculative and as-yet unsupported claim that *no* justice on the Massachusetts Superior Court can be trusted to impartially decide a Rule 30 motion has no bearing on his motion for discovery in this Court.  *Cf. Carey v. Saffold*, 536 U.S. 214, 220 (2002) ("The exhaustion requirement serves [28 U.S.C. § 2254]'s goal of promoting comity, finality, and federalism by giving state courts the first opportunity to review the claim, and to correct any constitutional violation in the first instance." (cleaned up and citations omitted)).

16

petitioner to exhaust his unexhausted claims in state court, the court's "discretion in structuring

the stay is limited by the timeliness concerns reflected in [28 U.S.C. § 2254]." *Rhines v. Weber*,

544 U.S. 269, 275, 277 (2005).  Thus, the Supreme Court has instructed that "district courts

should place reasonable time limits on a petitioner's trip to state court and back." *Id.* at 278.  At

the time of its expiration, the stay in this case was approaching the outer limits of reasonableness.

*See, e.g.*, *McCowen v. Mendosa*, No. 11-cv-12216-FDS, 2018 WL 2291313, at *6 (D. Mass.

May 18, 2018) (lifting stay after six years where counsel failed to exhaust ineffective assistance

of counsel claim and finding that "[t]o continue the stay would undermine the timeline concerns

of [28 U.S.C. § 2254], and frustrate the goal of achieving finality of state convictions"); *Mathews

v. Silva*, No. 09-cv-12200-FDS, 2019 WL 4573641, at *2 (D. Mass. Sept. 20, 2019) (similar).

The stay was last extended to permit Mr. Carnes to file either a motion for a new trial and

post-conviction discovery in state court or a motion for discovery in this Court.  *See* Docket Nos.

93, 94.  Because I am denying the motion for discovery Mr. Carnes filed in this Court, I am also

reinstating the stay for 90 days to permit Mr. Carnes a final opportunity to move for a new trial

and post-conviction discovery in state court.  If Mr. Carnes commences state court proceedings

within 90 days of the issuance of this Order, the stay may be extended during the pendency of

those proceedings and any related appeal, subject to the requirement that Mr. Carnes files status

reports every 60 days concerning the status of those proceedings.  But if Mr. Carnes fails to

commence state court proceedings within 90 days of the issuance of this Order, the stay will be

lifted.[7]

---

[7] Citing the doctrine of judicial estoppel, Mr. Carnes "requests that this Court find that the
Commonwealth is precluded from making an argument that Carnes in any way waived any
discovery requests, that his claims have already been litigated and denied, or that he has not
made a prima facie case for relief." Docket No. 107 at 16.  I decline to do so because this

## IV.    CONCLUSION

For the reasons set forth above, Mr. Carnes' motion for discovery is DENIED without prejudice to his ability to file a renewed motion for discovery after exhausting his conflict-of-interest claim and ability to obtain post-conviction discovery in state court.  This case shall be STAYED for 90 days from the date of this Order to allow Mr. Carnes to commence state court proceedings.  By January 27, 2026, and every 60 days thereafter, Mr. Carnes shall file status reports regarding the status of his state court proceedings, should he choose to pursue them.  In addition, Mr. Carnes shall notify this Court within fourteen days of the conclusion of the state court proceedings.

SO ORDERED.[8]

Dated:  October 29, 2025

/s/ Jessica D. Hedges
United States Magistrate Judge

---

request is neither ripe nor made in the right forum.  "Judicial estoppel is an equitable doctrine that prevents a litigant from taking a litigation position that is inconsistent with a litigation position successfully asserted by him in an earlier phase of the same case or in an earlier court proceeding." *RFF Family P'ship, LP v. Ross*, 814 F.3d 520, 527 (1st Cir. 2016) (quotation marks and brackets omitted).  This doctrine only applies, however, in a proceeding where a party is in fact seeking to assert a position inconsistent with one of its earlier positions. *See id.*  Mr. Carnes could, for instance, request that this Court estop the respondent from taking a position in *this* proceeding that is inconsistent with a position the respondent *previously* took.  But the doctrine of judicial estoppel does not vest this Court with the authority to *prospectively* estop the respondent from making arguments that it has not yet made in a state court proceeding that has not yet commenced.

[8] Mr. Carnes is advised that under Federal Rule Civil Procedure 72(a) and Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party seeking review by a district judge of these determination(s) and order(s) must serve and file any objections within fourteen days of being served a copy of this Order, unless a different time is prescribed by the magistrate judge or the district judge.